2001-NMSC-018

27 P.3d 456

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Nathan SANTILLANES, Defendant–Respondent.**

No. 26,170.

Supreme Court of New Mexico.

June 29, 2001.

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Phyllis H. Subin, Chief Public Defender, Lisa N. Cassidy, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Chief Justice.

{1} Following a jury trial, Defendant Nathan Santillanes was convicted of five counts of vehicular homicide, *see* NMSA 1978, § 66–8–101(C) (1991), four counts of child abuse resulting in death, *see* NMSA 1978, § 30–6–1(C) (1989, prior to 1997 amendment), one count of driving while intoxicated (DWI), fourth offense, *see* NMSA 1978, § 66–8–102(A), (G) (1994, prior to 1997 & 1999 amendments), one count of reckless driving, *see* NMSA 1978, § 66–8–113 (1987), and four other counts of various violations of the Motor Vehicle Code, NMSA 1978, § 66–1–1 to –8–141 (1978, as amended through 1996, prior to later amendment). On direct appeal, the Court of Appeals reversed the four convictions of child abuse resulting in death based on the principle of double jeopardy and the Court's interpretation of the general/specific statute rule. *State v. Santillanes*, 2000–NMCA–017, ¶ 1, 128 N.M. 752, 998 P.2d 1203, *cert. denied*, 128 N.M. 689, 997 P.2d 821 *and cert. granted*, 128 N.M. 690, 997 P.2d 822 (2000). This Court granted the State's petition for writ of certiorari to the Court of Appeals.[1] We conclude that the Court of Appeals misapplied the general/specific statute rule. Therefore, we now reverse the Court of Appeals, reinstate the convictions for child abuse resulting in death, and remand to the district court with instructions to vacate four counts of vehicular homicide.

---

1. We denied Defendant's petition for writ of certiorari to the Court of Appeals with respect to other issues Defendant raised in his direct appeal.

## I. Facts and Procedural Background

{2} On September 28, 1996, Defendant drove a vehicle down Highway 60 in Socorro County. Defendant's three children, his girlfriend, and her niece were passengers in the vehicle. As Defendant attempted to make a left hand turn at an intersection, his vehicle collided with an oncoming truck. All five passengers in Defendant's vehicle were killed as a result of the collision. Defendant had a blood alcohol level of .15 at the time of the accident, and Defendant admitted to the police that he consumed six beers during that day.

{3} In relation to the five deaths, Defendant was convicted of nine counts of two forms of homicide, which included five counts of vehicular homicide and four counts of child abuse resulting in death. The district court sentenced Defendant to eighteen years' imprisonment for each count of child abuse resulting in death and ordered three of these sentences to be served consecutively. Because Defendant had three prior DWI convictions, the district court sentenced Defendant to twelve years' imprisonment for each count of vehicular homicide pursuant to Section 66-8-101(D). The district court ordered that all five vehicular homicide convictions, as well as six other counts for which Defendant was convicted, run concurrently with the three consecutive sentences for child abuse resulting in death. Accounting for consecutive and concurrent sentencing, as well as a habitual offender enhancement of four years' imprisonment for two prior felony convictions, the district court ultimately sentenced Defendant to a total of fifty-eight years imprisonment.

## II. The Court of Appeals' Rationale

{4} Defendant appealed his convictions to the Court of Appeals. Defendant contended that his convictions of both vehicular homicide and child abuse resulting in death for the same four victims violated the double jeopardy protection against multiple punishments for the same offense.

■ {5} In reviewing Defendant's contention, the Court of Appeals applied the two-part test set out by this Court in *Swafford v.* *State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991), which asks first whether the underlying conduct of the accused for the violation of both statutes is unitary and second, if the conduct is unitary, whether the Legislature intended to establish separately punishable offenses. *Santillanes,* 2000–NMCA–017, ¶ 4, 128 N.M. 752, 998 P.2d 1203. As we emphasized in *Swafford,* "the sole limitation on multiple punishments is legislative intent." 112 N.M. at 13, 810 P.2d at 1233. The Court of Appeals determined that Defendant's conduct resulting in the vehicular homicide and child abuse resulting in death convictions was unitary. *Santillanes,* 2000–NMCA–017, ¶¶ 5–6, 128 N.M. 752, 998 P.2d 1203. Additionally, the Court of Appeals determined that the elements of the crimes of vehicular homicide and child abuse resulting in death are distinct and that "the two statutes stand independently," thereby raising a presumption that the statutes punish distinct offenses. *Id.* ¶ 7. However, the Court concluded that "the generally accepted notion that one death should result in only one homicide conviction" overcomes the presumption of multiple punishment. *Id.* ¶ 8. "[I]t is the death of another that the Legislature intended to punish, not the manner in which it was accomplished." *Id.* As a result, the convictions for both vehicular homicide and child abuse resulting in death for the same four victims constituted a double jeopardy violation. *Id.* We agree with this multiple punishment analysis. *See State v. Cooper,* 1997–NMSC–058, ¶ 53, 124 N.M. 277, 949 P.2d 660.

{6} Having concluded that the convictions resulted in a double jeopardy violation, the Court of Appeals addressed which of the convictions must be vacated. *Santillanes,* 2000–NMCA–017, ¶ 9, 128 N.M. 752, 998 P.2d 1203. The Court noted that "the general rule requires that the lesser offense be vacated" and that the lesser offense in this case is vehicular homicide. *Id.* However, the Court decided that this rule did not apply to the two statutes at issue in this case because of the general/specific statute rule. *Id.*

■ {7} The general/specific statute rule is a tool in statutory construction. *State v. Cleve,* 1999–NMSC–017, ¶ 17, 127 N.M. 240, 980 P.2d 23. Under this rule, if two statutes

dealing with the same subject conflict, the more specific statute will prevail over the more general statute absent a clear expression of legislative intent to the contrary. *Id.* The specific statute operates as an exception to the general statute "because the Legislature is presumed not to have intended a conflict between two of its statutes and because the Legislature's attention is more particularly directed to the relevant subject matter in deliberating upon the special law." *Id.* If two criminal laws punish the same criminal conduct, the general/specific statute rule " 'compel[s] the state to prosecute under' the special law." *Id.* (quoting *State v. Blevins,* 40 N.M. 367, 369, 60 P.2d 208, 210 (1936)).

{8} Applying the general/specific statute rule, the Court of Appeals relied on language from our opinion in *State v. Yarborough,* 1996–NMSC–068, 122 N.M. 596, 930 P.2d 131, and determined that "[t]he Legislature's enactment of a comprehensive Motor Vehicle Code indicates to us 'a legislative intent to preempt the field.'" *Santillanes,* 2000–NMCA–017, ¶ 11, 128 N.M. 752, 998 P.2d 1203 (quoting *Yarborough,* 1996–NMSC–068, ¶ 27, 122 N.M. 596, 930 P.2d 131) (citation omitted). The Court of Appeals thus concluded that the crime of vehicular homicide, being "the crime described in the Motor Vehicle Code[,] is the specific offense and is the law that the State is compelled to prosecute under." *Id.* As additional support for its conclusion, the Court of Appeals relied on NMSA 1978, § 66–8–101.1 (1985), which provides that injury to a pregnant woman by the unlawful operation of a vehicle, causing a miscarriage or stillbirth as a result of an injury, is a third degree felony. *Santillanes,* 2000–NMCA–017, ¶ 12, 128 N.M. 752, 998 P.2d 1203. Comparing Section 66–8–101.1 to the third degree felony of vehicular homicide, the Court of Appeals rejected the notion "that the Legislature intended that the death of a child between birth and eighteen years of age should result in different and considerably greater punishment than the death of an unborn child or an adult, when the conduct causing the death, driving while intoxicated, is the same." *Id.* As a result, the Court ordered that the four convictions of child abuse resulting in death be vacated. *Id.* ¶ 13.

{9} On certiorari review, the State does not challenge the Court of Appeals' determination that the convictions in this case violated the prohibition against double jeopardy. The only question presented for our review in this case is which of the two crimes, vehicular homicide or child abuse resulting in death, must be vacated. Our review is de novo. *Cleve,* 1999–NMSC–017, ¶ 7, 127 N.M. 240, 980 P.2d 23. In answering this question, we first address the Court of Appeals' application of the general/specific statute rule and the Court's determination that the State was compelled to charge vehicular homicide instead of child abuse resulting in death. Concluding that the Court of Appeals erred in its application of the general/specific statute rule, we subsequently address which of the two properly charged crimes must be vacated in light of an infringement on the double jeopardy protection against multiple punishments for the same offense.

### III.  The General/Specific Statute Rule

{10} In *Cleve,* we reviewed the use of the general/specific statute rule in New Mexico and attempted to clarify its proper application. 1999–NMSC–017, ¶¶ 16–36, 127 N.M. 240, 980 P.2d 23. We recently explained in *State v. Guilez,* 2000–NMSC–020, ¶ 7, 129 N.M. 240, 4 P.3d 1231, that our analysis from *Cleve* highlights two connected but distinct aspects of the general/specific statute rule. First, the general/specific statute rule "assists courts more generally in determining whether the Legislature intended to create an exception to a general statute by enacting another law dealing with the matter in a more specific way." *Cleve,* 1999–NMSC–017, ¶ 32, 127 N.M. 240, 980 P.2d 23. In *Guilez,* we characterized this aspect of the rule as a "preemption analysis." 2000–NMSC–020, ¶ 8, 129 N.M. 240, 4 P.3d 1231. Second, in the particular context of criminal law, the general/specific rule assists courts in determining whether the Legislature intended to limit the discretion of the prosecutor in charging under one statute instead of another for the commission of a particular offense. *Cleve,* 1999–NMSC–017, ¶ 25, 127 N.M. 240, 980 P.2d 23. We labeled this aspect of the rule

"a quasi-double-jeopardy analysis." *Guilez,* 2000–NMSC–020, ¶ 8, 129 N.M. 240, 4 P.3d 1231.

{11} We now believe that these labels do not serve their intended purpose of clarifying the general/specific statute rule. We believe that these labels inaccurately suggest that there must be two independent analyses undertaken in every case to determine whether the general/specific statute rule applies; this approach is unwarranted under our prior cases. *See, e.g., Cleve,* 1999–NMSC–017, ¶¶ 16–36, 127 N.M. 240, 980 P.2d 23, *Yarborough,* 1996–NMSC–068, ¶¶ 26–29, 122 N.M. 596, 930 P.2d 131; *State v. Ibn Omar–Muhammad,* 102 N.M. 274, 276–77, 694 P.2d 922, 924–25 (1985); *Blevins,* 40 N.M. at 369–70, 60 P.2d at 210. The primary goal of the general/specific statute rule is to determine legislative intent in the context of potentially conflicting laws. *Cleve,* 1999–NMSC–017, ¶ 17, 127 N.M. 240, 980 P.2d 23. The general/specific statute rule provides a method to resolve an otherwise irreconcilable conflict between statutes by treating the specific statute as an exception to the general statute. *Id.* This rule applies to both civil and criminal statutes. *Blevins,* 40 N.M. at 368–69, 60 P.2d at 209–10. For criminal statutes, the rule has both a particular analytical framework and a particular result. In analysis, we determine whether the general/specific statute rule applies to two criminal statutes by comparing the elements of the crimes and, if necessary, resorting to other indicia of legislative intent. *Cleve,* 1999–NMSC–017, ¶¶ 26–27, 127 N.M. 240, 980 P.2d 23. In result, if the general/specific statute rule applies under this analysis, then the prosecutor is compelled to proceed under the specific law and is precluded from charging the defendant under the general law. *Blevins,* 40 N.M. at 369, 60 P.2d at 210. The goal of the general/specific statute rule in the context of criminal law is to determine whether the Legislature intends to punish particular criminal conduct under a specific statute instead of a general statute. *See id.; Cleve,* 1999–NMSC–017, ¶ 17, 127 N.M. 240, 980 P.2d 23. Because this goal mirrors the purpose of the rule in general, there is no need to undertake a separate, duplicative inquiry under the label of preemption to determine whether the special criminal statute operates as an exception to the general criminal statute. As between two criminal statutes, the "exception" that is the relevant focus of the general/specific statute rule is a legislative intent that particular criminal conduct be prosecuted under one statute instead of another. *See Cleve,* 1999–NMSC–017, ¶¶ 22–27, 127 N.M. 240, 980 P.2d 23. We therefore discourage reliance on the labels established in *Guilez* for the application of the general/specific statute rule.

{12} We explained in detail the appropriate general/specific statute rule analysis for two criminal statutes in *Cleve,* 1999–NMSC–017, ¶¶ 22–28, 127 N.M. 240, 980 P.2d 23. We noted that a comparison of two criminal statutes under the general/specific statute rule is connected to the aspect of double jeopardy relating to multiple punishments for the same offense. *Id.* ¶ 22. Both principles are rooted in statutory construction and utilize similar factors to determine legislative intent, but these principles have a different aim. "[W]hereas courts use the principle of double jeopardy ... to assess the propriety of multiple punishments by courts based on multiple crimes charged by a prosecutor, courts use the general/specific rule to scrutinize the propriety of a single charge of one crime as opposed to a different crime." *Id.* ¶ 25.

{13} Because of the close relationship between the general/specific statute rule and the principle of double jeopardy, we begin an analysis of two criminal statutes under the general/specific statute rule by ascertaining whether the Legislature intended to create multiple punishments for the two relevant crimes, even if the defendant was only charged with or convicted of one of the two crimes at issue. *See Blevins,* 40 N.M. at 368, 60 P.2d at 209 (addressing a conviction under a single statute and stating, "We start with the premise that both acts condemn the same offense. A conviction under one statute could be pleaded as former jeopardy against a subsequent prosecution under the other statute."); *see also Cleve,* 1999–NMSC–017, ¶ 22, 127 N.M. 240, 980 P.2d 23. This question is an appropriate starting point for a

general/specific statute rule inquiry "because a legislative intent to create multiple punishments necessarily implies that the Legislature also intended to leave intact the prosecutor's charging discretion." *Cleve*, 1999–NMSC–017, ¶ 29, 127 N.M. 240, 980 P.2d 23.

{14} In this sense, the multiple punishment question under the general/specific statute rule is somewhat hypothetical because it must be conducted regardless of whether a case presents a separate inquiry concerning double jeopardy. Additionally, because the only multiple punishment question under the general/specific statute rule is whether the Legislature intended to create separately punishable offenses for the same conduct, *see Cleve*, 1999–NMSC–017, ¶ 29, 127 N.M. 240, 980 P.2d 23, there is no need to apply the first element of a true double jeopardy inquiry under *Swafford*, whether the conduct in question is unitary. If a defendant argues that two convictions in the same proceeding violate double jeopardy, a finding of non-unitary conduct will preclude a determination of impermissible multiple punishments and will make further inquiry into legislative intent unnecessary. *Swafford*, 112 N.M. at 13–14, 810 P.2d at 1233–34. However, for purposes of the general/specific statute rule, we do not ask whether the conduct used to convict a defendant of two crimes is unitary; instead, as demonstrated by *Blevins*, we ask whether the conduct forming the basis for the conviction under the general statute should have been prosecuted under the specific statute. For this reason, if a defendant is convicted of two crimes and raises claims of both double jeopardy and the general/specific statute rule, it is important to analyze each claim independently.

{15} In *Guilez*, for example, the defendant was convicted of both child abuse and reckless driving. 2000–NMSC–020, ¶ 1, 129 N.M. 240, 4 P.3d 1231. We addressed both the double jeopardy prohibition against multiple punishments for the same offense and the general/specific statute rule. *Id.* ¶¶ 12–15. Under double jeopardy, we concluded that the conduct forming the basis for both convictions was not unitary and that there was thus no violation of double jeopardy. *Id.* ¶ 14. We then determined from this conclu-

sion that there was "no need to apply the general/specific statute rule as it applies to multiple punishment." *Id.* We now clarify that we should not have applied our conclusion regarding unitary conduct to foreclose further inquiry into a legislative intent to create multiple punishments for purposes of the general/specific statute rule. Instead, consistent with the premise utilized in *Blevins*, we should have focused on the conduct forming the basis for the conviction under the child abuse statute, the more general statute according to the defendant, to determine whether the Legislature intended to punish that conduct under the reckless driving statute, the more specific statute according to the defendant. Viewing the facts of *Guilez* through this lens, we are reassured that we correctly decided that the general/specific statute rule did not apply in that case. In *Guilez*, we determined that "[t]he act required to commit child abuse was completed, although continuing, before the act of reckless driving began." 2000–NMSC–020, ¶ 13, 129 N.M. 240, 4 P.3d 1231. Because the conduct charged under child abuse would not have even met the elements of reckless driving, the Legislature certainly would not have intended to require prosecution for this conduct under the reckless driving statute rather than the child abuse statute.

{16} If our multiple punishment inquiry reveals that the Legislature did not intend to create separately punishable offenses for the same conduct, then we proceed to the narrower question of whether the Legislature intended to limit the charging discretion of the prosecutor. Both of these questions, whether the Legislature intended to create separately punishable offenses and whether the Legislature intended to circumscribe prosecutorial charging discretion, are answered under the same framework. First, we assess "whether each provision requires proof of an additional fact that the other does not" in accordance with the test established in *Blockburger v. United States*, 284 U.S. 299, 303–04, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Cleve*, 1999–NMSC–017, ¶ 19, 127 N.M. 240, 980 P.2d 23; *accord Swafford*, 112 N.M. at 8–9, 14, 810 P.2d at 1228–29, 1234. "If the elements of the two crimes are the

same, the general/specific statute rule applies, and the prosecution must charge the defendant under the special law absent a clear expression of legislative intent to the contrary." *Cleve* 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23. An identity in elements demonstrates that the Legislature did not intend to punish separately under the two statutes for the same conduct and intended to limit prosecutorial discretion, absent evidence of a contrary legislative intent. For example, in *Blevins*, 40 N.M. at 369, 60 P.2d at 210, we applied the general/specific statute rule and limited prosecutorial discretion due to an identity in elements. If the elements differ, however, there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact; further inquiry is then necessary to determine whether the presumption stands. *See Cleve*, 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23. At this stage, courts should resort to other indicia of legislative intent to determine, first, whether the Legislature intended for multiple punishments under the statutes, *see Swafford*, 112 N.M. at 14, 810 P.2d at 1234, and, second, "whether the Legislature intended to limit prosecutorial discretion in the selection of charges for the specific criminal conduct," *Cleve*, 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23. These other indicia of legislative intent include the language, purpose, and histories of the statutes, *Cleve*, 1999–NMSC–017, ¶ 27, 127 N.M. 240, 980 P.2d 23, as well as "whether the violation of one statute will normally result in a violation of the other." *Id.* ¶ 31.

{17} Of course, we recognize that each case presents unique questions of statutory construction, and we emphasize that the general/specific statute rule should not be applied in a rigid, mechanistic fashion. As with other rules of statutory construction, the general/specific statute rule "is merely a tool of statutory interpretation and is not an end to itself." *State ex rel. Dep't of Pub. Safety v. One 1990 Chevrolet Pickup*, 115 N.M. 644, 648, 857 P.2d 44, 48 (Ct.App.1993) (describing the last antecedent rule and stating that the "rule is merely an aid to interpretation, and is not inflexible and uniformly binding").

The general/specific statute rule should not be applied in a manner that ignores other rules of statutory construction or the overall goal of statutory construction "to ascertain and give effect to the intent of the Legislature." *Cleve*, 1999–NMSC–017, ¶ 8, 127 N.M. 240, 980 P.2d 23.

{18} Most criminal cases involving the general/specific statute rule will be resolved through the elements-based inquiry described above. Nonetheless, exceptional cases may require further analysis. For example, in *Cleve*, we concluded that the general/specific statute rule did not apply to the crimes of unlawful hunting and cruelty to animals because, applying *Swafford*, the Legislature intended to create separately punishable offenses and thus did not intend to limit prosecutorial discretion. *Cleve*, 1999–NMSC–017, ¶ 31, 127 N.M. 240, 980 P.2d 23. However, the argument in *Cleve* went beyond the comparison of two criminal statutes and presented the additional question under the general/specific statute rule of whether the authorization of particular conduct in one group of statutes resulted in an irreconcilable conflict with the apparent criminalization of the same conduct in another statute. *Id.* ¶¶ 32–36. We determined in *Cleve* that the Legislature's authorization of hunting and fishing operated as an exception to the offense of cruelty to animals to the extent that the latter could be construed to criminalize the activity of hunting and fishing. *Id.* ¶¶ 33–36.

{19} In *Guilez*, we also faced an argument that went beyond the question of whether a specific crime should be charged instead of a general crime. We addressed in *Guilez* the contention that the Motor Vehicle Code preempted the field for all criminal offenses involving the operation of a vehicle. We do not believe that this notion of "preempting the field" readily fits into the framework of the general/specific statute rule for determining whether one statute operates as an exception to another statute. We believe this argument is more properly understood as invoking a related rule of statutory construction: repeal by implication. *See Guilez*, 2000–NMSC–020, ¶ 15, 129 N.M. 240, 4 P.3d 1231 (stating that the question is "whether

the [L]egislature intended to repeal the child abuse statute, as it applies to children in vehicles, when it enacted the Motor Vehicle Code"); *see also State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 575–76, 855 P.2d 562, 564–65 (1993) ("We ... presume that the legislature did not intend to enact a law inconsistent with existing law. This rule of statutory construction complements the notion that judicial repeal of legislation by implication is disfavored." (citation omitted)). Under this rule of statutory construction, "[r]epeal by implication is disfavored and two acts which are seemingly contradictory should be construed, when possible, so as to give effect to both." *Clothier v. Lopez*, 103 N.M. 593, 595, 711 P.2d 870, 872 (1985); *accord* NMSA 1978, § 12–2A–10(A) (1997). Accordingly, we noted in *Guilez* that "there must be a strong indication of legislative intent" in order to conclude that one statute or act implicitly repeals another statute. *Guilez*, 2000–NMSC–020, ¶ 24, 129 N.M. 240, 4 P.3d 1231. "Absent an irreconcilable conflict, a specific statute prevails over the general statute only upon a clearly expressed legislative intention to repeal." *State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 805, 737 P.2d 1180, 1182 (Ct.App.1987).

■ {20} We held in *Guilez* that the Legislature, by enacting the Motor Vehicle Code as a whole, did not intend to repeal the child abuse statute as it applies to children in vehicles. *See Guilez*, 2000–NMSC–020, ¶¶ 15, 20, 129 N.M. 240, 4 P.3d 1231 (stating that "the Motor Vehicle Code as a whole does not appear to preempt the child abuse statute" in response to the question "whether the [L]egislature intended to repeal the child abuse statute, as it applies to children in vehicles, when it enacted the Motor Vehicle Code, generally"). We reaffirm this holding from *Guilez* and therefore reject the Court of Appeals' determination in the present case, *see Santillanes*, 2000–NMCA–017, ¶ 11, 128 N.M. 752, 998 P.2d 1203, that the comprehensive nature of the Motor Vehicle Code evidences an intent to preempt the field with regard to offenses involving the operation of a vehicle. *See Guilez*, 2000–NMSC–020, ¶ 20, 129 N.M. 240, 4 P.3d 1231 ("The [Motor Vehicle] Code does not generally provide extra protection for children."); *id.* ¶ 24 (stating that "[t]he holding of the Court of Appeals contravenes the intent of the child abuse statute by decreasing the protection for children when the abuse suffered is a result of driving offenses"); *cf. Ibn Omar-Muhammad*, 102 N.M. at 277–78, 694 P.2d at 925–26 (concluding that the offense of depraved mind murder applied to conduct involving the operation of a vehicle and rejecting the argument that a crime contained in the Motor Vehicle Code, vehicular homicide, operated as an exception to depraved mind murder to the extent of compelling prosecution under the Motor Vehicle Code).

■ {21} These cases, *Cleve* and *Guilez*, illustrate that the general/specific statute rule should be applied in a flexible manner and should be used in conjunction with other rules of statutory interpretation in order to achieve the ultimate goal of discerning the intent of the Legislature. In the specific context of comparing two criminal statutes, however, we caution that courts should apply the general/specific statute rule guardedly to the extent that it operates to restrict the charging discretion of the prosecutor. We have previously said that the State "has broad discretion in charging." *State v. Brooks*, 117 N.M. 751, 755, 877 P.2d 557, 561 (1994). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *State v. Ogden*, 118 N.M. 234, 240–41, 880 P.2d 845, 851–52 (1994) (quotation marks and quoted authority omitted) (alteration in original) (stating that "prosecutorial discretion in charging is quite broad"). The New Mexico Constitution provides that the "district attorney for each judicial district ... shall be the law officer of the state and of the counties within his [or her] district," N.M. Const. art. VI, § 24, and the Legislature has prescribed as one of the duties of the district attorney the prosecution "for the state in all courts of record of the counties of his [or her] district [of] all cases, criminal and civil, in which the state or any county in his [or her] district may be a party or may be interested." NMSA 1978, § 36–1–18(A)

(1966). Accordingly, we have recognized that " 'it is the [D]istrict [A]ttorney who is elected by the people of this state to decide this very question of what charges to bring and what people to prosecute in the best interest of the people of the State of New Mexico.' " *State v. Brule,* 1999–NMSC–026, ¶ 14, 127 N.M. 368, 981 P.2d 782 (quoting *State v. Brule,* 1997–NMCA–073, ¶ 31, 123 N.M. 611, 943 P.2d 1064 (Bosson, J., dissenting)) (alteration in original). *See generally State v. Reese,* 78 N.M. 241, 243–49, 430 P.2d 399, 401–07 (1967) (discussing the relationship between the prosecutorial powers of the Attorney General and district attorneys). Therefore, in applying the general/specific statute rule, courts must be wary not to infringe unnecessarily on the broad charging authority of district attorneys, and we will require clear evidence of an intent by the Legislature to limit prosecutorial discretion. *See* § 12–2A–10(A) ("If statutes appear to conflict, they must be construed, if possible, to give effect to each."); *see also State v. Chavez,* 93 N.M. 270, 274, 599 P.2d 1067, 1071 (Ct.App.1979) ("The existence or nonexistence of such restraints [on the district attorney's constitutional and statutory power to initiate prosecutions] is a policy matter. Absent a constitutional violation, such policy is for the Legislature to decide.").

## IV.  Vehicular Homicide, Child Abuse, and the General/Specific Statute Rule

{22} Consistent with the analysis articulated above, the Court of Appeals initially determined in this case that the Legislature did not intend to create separately punishable offenses under the two statutes at issue for a single death. With this predicate established, the Court of Appeals determined that the vehicular homicide statute operates as an exception to the child abuse statute to the extent of compelling the State to prosecute under the former for cases involving the operation of vehicles. *Santillanes,* 2000–NMCA–017, ¶¶ 11–12, 128 N.M. 752, 998 P.2d 1203. The Court of Appeals relied on two separate grounds for this conclusion: (1) vehicular homicide and child abuse resulting in death prohibit the same conduct and "where two statutes prohibit the same conduct and

one involves the operation of a vehicle" the State is compelled to prosecute under the Motor Vehicle Code; and (2) as "additional indicia of legislative intent," the creation of a third degree felony for injury to a pregnant woman by another in the unlawful operation of a vehicle in Section 66–8–101.1 indicates an intent to punish equally for the death of all victims as a result of vehicular homicide. *Id.* ¶¶ 11–12. We disagree.

{23} The general/specific statute rule "only applies when two or more statutes have conflicting provisions concerning the same matter." *Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 627, 857 P.2d 22, 27 (1993). In concluding that vehicular homicide and child abuse prohibit the same conduct, the Court of Appeals disregarded its own double jeopardy analysis. As we explained in *Cleve,* the starting point in a general/specific statute rule inquiry with respect to two criminal statutes is a comparison of the elements of the crimes under the *Blockburger* test. *Cleve,* 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23. In its double jeopardy analysis, the Court of Appeals determined under an elements inquiry that "the statutes stand independently of one another, and neither subsumes the other because the charge of child abuse resulting in death requires ... the death of a child and vehicular homicide requires that the death occur as a result of a defendant driving a vehicle while intoxicated." *Santillanes,* 2000–NMCA–017, ¶ 7, 128 N.M. 752, 998 P.2d 1203. The Court of Appeals recognized that this difference in elements creates a presumption in favor of multiple punishment, *id.;* it also creates a presumption against application of the general/specific statute rule. Although the presumption in favor of multiple punishment is overcome in this case "by the generally accepted notion that one death should result in only one homicide conviction," *id.* ¶ 8, there is no analogous principle to support the Court of Appeals' conclusion that the Legislature intended to limit the prosecutor's charging discretion.

{24} We agree with the Court of Appeals that under the *Blockburger* test the elements of the crimes differ; thus, we apply the factors outlined in *Cleve* to determine the

intent of the Legislature. *Cleve,* 1999–NMSC–017, ¶ 26, 127 N.M. 240, 980 P.2d 23. First, for child abuse resulting in death and vehicular homicide, as with the two crimes in *Cleve,* "the violation of one of these statutes would not commonly result in violation of the other." *Id.* ¶ 31; *cf. Guilez,* 2000–NMSC–020, ¶ 23, 129 N.M. 240, 4 P.3d 1231 (stating that "there are obvious instances in which reckless driving would not be child abuse"). Additionally, as we recognized with respect to reckless driving and child abuse in *Guilez,* 2000–NMSC–020, ¶ 17, 129 N.M. 240, 4 P.3d 1231, the crimes of vehicular homicide and child abuse have different purposes. *See generally* 2B Norman J. Singer, *Sutherland Statutory Construction* § 51.03, at 202 (6th ed. 2000) ("Characterization of the object or purpose is more important than characterization of subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other."). Similar to the prohibition of reckless driving in Section 66–8–113, the crime of vehicular homicide punishes conduct that places the general public at risk of serious harm, the result of which causes another's death. *Cf. Guilez,* 2000–NMSC–020, ¶ 17, 129 N.M. 240, 4 P.3d 1231. By contrast, as we explained in *Guilez,* Section 30–6–1(C) is "designed to give greater protection to children than adults" because children "are more vulnerable than adults" and "are under the care and responsibility of adults." *Guilez,* 2000–NMSC–020, ¶ 17, 129 N.M. 240, 4 P.3d 1231. "When an adult, without justification, endangers a child's safety, the adult is more culpable than when the safety of another adult is jeopardized." *Id.* Finally, the history of the child abuse statute "clearly shows the [L]egislature's intent to protect children from abuse" and "compels the conclusion that the [L]egislature has expanded protection for children." *Id.* ¶ 18. From all relevant indicia of legislative intent, it is clear that the Legislature did not intend to limit the discretion of the prosecutor in charging an individual who caused the death of a child in a manner that otherwise meets the elements of both crimes with the violation of either Section 30–6–1(C) or Section 66–8–101 when the crime occurred during the operation of a vehicle.

{25} We do not believe that Section 66–8–101.1, proscribing the injury to a pregnant woman by vehicle, supports a contrary legislative intent. We believe this statute punishes an entirely distinct harm from Section 30–6–1(C), and these statutes are therefore not suitable for comparison. Section 30–6–1(C)(1) requires that an individual intentionally, knowingly, or negligently cause or permit a child to be "placed in a situation that may endanger the child's life or health." [2] As we have stated, the purpose of this statute is to provide heightened protection for children. By contrast, Section 66–8–101.1 is designed to punish a particular injury to a pregnant woman, "causing her to suffer a miscarriage or stillbirth as a result of that injury," by a particular instrumentality, a vehicle. These two statutes are simply too divergent in scope and purpose to infer a common design by the Legislature; a legislative decision to protect against a specific injury to pregnant women by vehicle does not signal an intent to discard the existing heightened protections for children.

{26} Moreover, we disagree with the fundamental premise of the Court of Appeals that the Legislature did not intend to provide greater protection to children than to an unborn child or an adult. We believe this proposition ignores relevant provisions in the Criminal Code. *See Ogden,* 118 N.M. at 243, 880 P.2d at 854 ("[S]tatutes in pari materia[ ] should be read together to ascertain legislative intent."). Outside the vehicle context, the Legislature has created a crime that is analogous to Section 66–8–101.1: "Injury to pregnant woman consists of a person other than the woman injuring a pregnant woman in the commission of a felony causing her to

---

**2.** Negligence refers to criminal negligence and is defined in UJI 14–602 NMRA 2001 as one who knows or should know that his or her conduct creates a substantial and foreseeable risk and who disregards the risk and is wholly indifferent to the consequences of the conduct and the welfare and safety of the child. Under a 1997 amendment to the child abuse statute, criminal negligence "means a person who knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." NMSA 1978, § 30–6–1(A)(3) (1997).

suffer a miscarriage or stillbirth as a result of that injury." NMSA 1978, § 30–3–7(A) (1985). This crime is a third degree felony. Section 30–3–7(C). In contrast to this penalty, the crime of causing the death of an adult or a child during the commission of a felony is a capital felony. *See* NMSA 1978, § 30–2–1(A)(2) (1994) (felony murder); *State v. Ortega*, 112 N.M. 554, 560–66, 817 P.2d 1196, 1202–08 (1991) (describing the requirements for felony murder under Section 30–2–1(A)(2)). In addition, the crime of child abuse resulting in death is a first degree felony even though there is no requirement, as in Section 30–3–7(A), that the death occur during the commission of a felony. Finally, in contrast to the first degree felony of child abuse resulting in death, the crime of causing the death of an adult with a similar level of mental culpability, criminal negligence, is a fourth degree felony. *See* NMSA 1978, § 30–2–3(B) (1994) (involuntary manslaughter); *Yarborough*, 1996–NMSC–068, ¶ 20, 122 N.M. 596, 930 P.2d 131 (holding that involuntary manslaughter requires proof of criminal negligence). From these statutes, we believe it is plain that the Legislature intends to provide heightened protection to children in comparison to adults and pregnant women, and we do not believe that there is any indication of a contrary intent for crimes involving the operation of a motor vehicle. We therefore reject the Court of Appeals' reliance on Section 66–8–101.1 as evidence of a legislative intent to limit the charging discretion of the prosecutor in this case.

▇▇▇ {27} The Legislature has created a special protection for children through heightened punishment for wrongful conduct causing death. To remove this protection based solely on the instrumentality causing death, as the Court of Appeals' analysis does, would frustrate the Legislature's clear intent. "The charging pattern that best reconciles the community's interest in proper enforcement of the laws and the interest (shared by the community and the defendant) in fairness to the defendant may well be a charging pattern fitting between the two extremes." *Brooks*, 117 N.M. at 755, 877 P.2d at 561 (quoting *State v. Altgilbers*, 109 N.M. 453, 466, 786 P.2d 680, 693 (Ct.App.1989)). The Legislature has vested the district attorney

with broad discretion to reconcile these interests in its charging decisions, and we will not interfere with this discretion through application of the general/specific statute rule unless the Legislature's intent to limit the prosecutor's discretion is clear. *Cf. Guilez*, 2000–NMSC–020, ¶ 24, 129 N.M. 240, 4 P.3d 1231 (requiring "a strong indication of legislative intent" before applying the general/specific statute rule). *See generally United States v. Batchelder*, 442 U.S. 114, 124, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). Thus, we conclude that the general/specific statute rule does not apply in this case, and the prosecutor retained the discretion to charge Defendant with either vehicular homicide or child abuse resulting in death, or both, *see Ohio v. Johnson*, 467 U.S. 493, 500, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").

## V. Effect of a Multiple Punishment Violation

▇▇▇ {28} Although the general/specific statute rule does not apply in this case, we must still decide which of the convictions, vehicular homicide or child abuse resulting in death, must be vacated as a result of the violation of the double jeopardy protection against multiple punishments for the same offense. This question is answered by our opinion in *State v. Pierce*, 110 N.M. 76, 86–87, 792 P.2d 408, 418–19 (1990).

> The rule of merger precludes an individual's conviction and sentence for a crime that is a lesser included offense of a greater charge upon which defendant has also been convicted. Although the state properly may charge in the alternative, where defendant is convicted of one or more offenses which have merged into the greater offense he [or she] may be punished for only one.

*Id.* (citations omitted). We later clarified in *Swafford* that there is no common-law merger doctrine in New Mexico; instead, the "merger" to which we referred in *Pierce* applies "only in the context of constitutional double jeopardy." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. Merger in New Mexico is a remedial measure in response to a violation of the double jeopardy protection against multiple punishments for a single offense; it is not a separate method of determining whether two convictions impermissibly punish a defendant twice for a single offense. *See id.* Under *Pierce,* concurrent sentencing does not adequately remedy the imposition of impermissible multiple punishments for a single offense; double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated. *See Pierce,* 110 N.M. at 87, 792 P.2d at 419. In *Pierce,* we applied this rule to convictions of child abuse resulting in death and first-degree deliberate-intent murder, even though these offenses did not technically meet the traditional test for merger. *Id.* at 86, 792 P.2d at 418.[3] Thus, as recognized by the Court of Appeals in this case, *Pierce* stands for the proposition that "the general rule requires that the lesser offense be vacated" in the event of impermissible multiple punishments. *Santillanes,* 2000–NMCA–017, ¶ 9, 128 N.M. 752, 998 P.2d 1203; *see*

*Pierce,* 110 N.M. at 85, 792 P.2d at 417 ("These offenses merged into the greater offense of first-degree murder.").

{29} The offenses at issue in this case cannot be characterized as lesser included and greater inclusive crimes because, as noted previously, they each contain different elements and stand independently in relation to one another. *See Swafford,* 112 N.M. at 11–12, 810 P.2d at 1231–32; *see also State v. Meadors,* 121 N.M. 38, 42, 908 P.2d 731, 735 (1995) (stating that, for purposes of a double jeopardy inquiry, "a court would find an offense to be a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible *ever* to commit the greater offense without also committing the lesser offense" (emphasis added)). Nevertheless, we agree with the Court of Appeals that child abuse resulting in death is a greater offense than vehicular homicide, and therefore, given the violation of the double jeopardy protection against multiple punishments for a single offense, the convictions for vehicular homicide must merge into the convictions for child abuse with respect to the death of the same victims.[4]

{30} The Legislature has created in the Criminal Code a classification system for fel-

---

**3.** In *Pierce,* we relied on the articulation of the merger doctrine by the Court of Appeals in *State v. Sandoval,* 90 N.M. 260, 561 P.2d 1353 (Ct.App. 1977). *Pierce,* 110 N.M. at 85–86, 792 P.2d at 417–18. As stated in *Sandoval,* the test for the application of merger is whether one offense necessarily involves the other, which is determined by "look[ing] to the definitions of the crimes to see whether the elements are the same." 90 N.M. at 263, 561 P.2d at 1356. The statutory definitions of child abuse resulting in death and first degree murder reveal that these offenses have different elements for purposes of a *Blockburger* analysis, and child abuse resulting in death is not properly characterized as a lesser included offense of first degree murder. *See Swafford,* 112 N.M. at 12, 810 P.2d at 1232 ("An offense is a true lesser included offense of another if its elements are completely subsumed by another, greater offense."). Based on our clarification of double jeopardy law in *Swafford, Pierce* can be viewed as applying the same principle that the Court of Appeals applied in the present case: unless a contrary indication appears in the statutes, the Legislature intends to punish a sin-

gle death with only one homicide conviction. *See generally State v. Gonzales,* 113 N.M. 221, 223–24, 824 P.2d 1023, 1025–26 (1992) (noting a request for additional briefing on the issue of merger under *Pierce,* despite the State's initial agreement with the defendant's position, following the clarification of double jeopardy law in *Swafford*).

**4.** We note that in this case it makes little practical difference which offense is vacated. The district court's sentence indicates a determination that fifty-eight years imprisonment was an appropriate sentence for Defendant's actions. Although the court achieved this sentence through consecutive application of three counts of child abuse resulting in death with a habitual offender enhancement and concurrent sentencing on all remaining counts, it also could have done so with consecutive sentencing for the five counts of vehicular homicide, each of which was subject to a sentence of twelve years imprisonment under Section 66–8–101(D) due to Defendant's three prior DWI convictions.

onies under which felony offenses are designated as capital, first degree, second degree, third degree, and fourth degree felonies. NMSA 1978, § 30–1–7 (1963). The Legislature has applied this classification scheme to many aspects of the Criminal Code. For example, the applicable statute of limitations for particular offenses is determined by degree of felony. NMSA 1978, § 30–1–8 (1997). Most importantly, the Legislature has utilized the different degrees of felonies to establish the level of punishment for various offenses. NMSA 1978, § 31–18–15(A) (1999). We believe that the degree of felony under Section 30–1–7 is an appropriate measure of legislative intent regarding which of two offenses is a greater offense. *See Swafford,* 112 N.M. at 15, 810 P.2d at 1235 ("The quantum of punishment also is probative of legislative intent to punish.").

{31} This measure is particularly appropriate in the present case. Unlike the third degree felony of vehicular homicide, child abuse resulting in death is a first degree felony. There are a very limited number of crimes in the Criminal Code that are designated as first degree felonies, and these crimes are subject to a substantial sentence of eighteen years imprisonment. Section 31–18–15(A)(1). The Legislature's decision to designate child abuse resulting in death as one of these crimes indicates the Legislature's view of the seriousness of the offense, the level of protection necessary to deter the commission of the offense, and the level of punishment necessary to vindicate society's interest in retribution for the criminal act. Moreover, the Legislature has signaled its intent to ensure that those convicted of a first degree felony serve the term of imprisonment prescribed in Section 31–18–15(A)(1) by making the sentencing mandatory. *See* NMSA 1978, § 31–20–3 (1985) (excluding first degree felonies from discretionary suspended sentences or deferred sentencing). We must respect the Legislature's decision to provide greater protection to children by classifying child abuse resulting in death as a first degree felony, and we therefore believe that the third degree felony of vehicular

homicide must be construed as the lesser offense in this case.

{32} Within his general/specific statute rule argument, Defendant contends that the Legislature intended to punish vehicular homicide over child abuse resulting in death, as evidenced by a heightened mental state, general criminal intent,[5] that is required for vehicular homicide but is not required for child abuse resulting in death. We disagree. The Legislature's view of the seriousness of these two offenses cannot be determined by the applicable mens rea. The Legislature's decision to require only criminal negligence, and no showing of a general criminal intent, for child abuse stems from "[t]he obvious public interest ... [in] the prevention of cruelty to children." *State v. Lucero,* 87 N.M. 242, 245, 531 P.2d 1215, 1218 (Ct.App. 1975). "The usual rationale for [not requiring a showing of a general criminal intent] is that the public interest in the matter is so compelling or that the potential for harm is so great that the interests of the public must override the interests of the individual." *Id.* at 244, 531 P.2d at 1217. The protection of children "is a legitimate as well as a laudable purpose within the police power of the State." *Id.* at 245, 531 P.2d at 1218. Indeed, this Court stated in *Guilez* that "[w]hen an adult, without justification, endangers a child's safety, the adult is more culpable than when the safety of another adult is jeopardized." 2000–NMSC–020, ¶ 17, 129 N.M. 240, 4 P.3d 1231. Thus, the lesser mens rea for child abuse resulting in death does not indicate that the Legislature views the crime as a lesser offense than vehicular homicide; it is quite clearly the opposite.

{33} Defendant also contends that we should apply the rule of lenity to vacate the child abuse resulting in death convictions. However, unlike a determination of whether the Legislature intended multiple punishments for a single offense, *see Swafford,* 112 N.M. at 15, 810 P.2d at 1235, the rule of lenity does not apply to a determi-

---

5. General criminal intent means "the purposeful doing of an act that the law declares to be a crime." *Ibn Omar–Muhammad,* 102 N.M. at 278, 694 P.2d at 926; *accord* UJI 14–141 NMRA 2001.

nation of which conviction to vacate as a result of impermissible multiple punishments.

{34} "The rule of lenity counsels that criminal statutes should be interpreted in the defendant's favor when insurmountable ambiguity persists regarding the intended scope of a criminal statute." *Ogden,* 118 N.M. at 242, 880 P.2d at 853 (discussing the rule in the context of determining the meaning of the phrase "peace officer" in a statute establishing aggravating circumstances for purposes of the death penalty). It is reserved for "those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (quotation marks and quoted authority omitted), *quoted in State v. Anaya,* 1997–NMSC–010, ¶ 32, 123 N.M. 14, 933 P.2d 223 (applying the rule of lenity to the question of whether the Legislature intended to apply habitual offender sentencing to felony DWI); *see State v. Edmondson,* 112 N.M. 654, 658, 818 P.2d 855, 859 (Ct.App.1991) ("Nor have we deemed a division of judicial authority automatically sufficient to trigger lenity." (quoting *Moskal,* 498 U.S. at 108, 111 S.Ct. 461)). In deciding whether the Legislature intends to create separately punishable offenses, the rule of lenity dictates that, if insurmountable ambiguity remains after applying the *Blockburger* test and after resorting to traditional indicia of legislative intent, "it is to be presumed the [L]egislature did not intend pyramiding punishments for the same offense." *Swafford,* 112 N.M. at 15, 810 P.2d at 1235; *see id.* at 10, 810 P.2d at 1230; *see also Herron v. State,* 111 N.M. 357, 361, 805 P.2d 624, 628 (1991) (stating that in single-statute unit-of-prosecution cases the rule " 'means that if [the legislative body] does not fix the punishment for [an] . . . offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.' " (quoting *Bell v. United States,* 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955))). Thus, in the context of assessing a legislative intent to create multiple punishments, the application of the rule of lenity is con-

sistent with the rule's purposes of "ensur[ing] that criminal statutes will provide fair warning concerning conduct rendered illegal and strik[ing] the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985).

{35} By contrast, once it is determined that multiple punishments are not permitted, the question of which conviction to vacate does not involve the intended scope of a criminal statute. In the event of a multiple punishment violation, and assuming that the general/specific statute rule does not apply, the Legislature has expressed its intent that either of the criminal offenses, and the applicable punishment, apply to the defendant's action; the conduct falls within the scope of the statutes in terms of the substantive definition of the crimes, and there is no ambiguity concerning the penalty imposed for each crime. What the Legislature intends to prohibit is the application of both offenses and their punishments against the defendant for unitary conduct. Because the defendant's conduct unquestionably falls within the scope of the relevant statutes and because the Legislature has clearly established the penalties for the violation of these statutes, it would not serve the purposes of the rule of lenity to apply it to the inquiry into which offense to vacate. *See Liparota,* 471 U.S. at 427, 105 S.Ct. 2084; *State v. Mabry,* 96 N.M. 317, 321, 630 P.2d 269, 273 (1981) ("It has long been recognized in this state that it is solely within the province of the Legislature to establish penalties for criminal behavior."); *cf. Batchelder,* 442 U.S. at 121–22, 99 S.Ct. 2198 (declining to apply the rule of lenity because the defendant "unquestionably violated" the applicable statute and the penalty provision "unquestionably permits five years' imprisonment for such a violation," and observing that the fact that another statute "provides different penalties for essentially the same conduct is no justification for taking liberties with unequivocal statutory language").

{36} In *State v. House,* 2001–NMCA–011, ¶¶ 14–16, 130 N.M. 418, 25 P.3d 257, *cert. denied,* 130 N.M. 167, 21 P.3d 36 (2001), the Court of Appeals rejected the argument that

the rule of lenity requires vacating counts of vehicular homicide based on the underlying crime of DWI in favor of counts of the same offense based on the underlying crime of reckless driving. The Court of Appeals observed that the sentencing scheme within Section 66–8–101 indicates a legislative "intent to impose a greater penalty for DWI-related violations of the statute, when committed by a recidivist-impaired driver." *Id.* ¶ 16. The Court of Appeals also noted that the defendant's argument to retain the convictions for vehicular homicide based on reckless driving reflected an interpretation of Section 66–8–101 under which vehicular homicide based on DWI is a greater offense. *Id.* As recognized by the Court in *House,* to apply the rule of lenity in this context, a court would have to resolve the very question we established in *Pierce* for determining the appropriate remedy for a multiple punishment violation: which of the two offenses is the lesser and which is the greater. Thus, because the rule of lenity, by its very nature, would uniformly operate to vacate the lesser offense, its application in this context would directly conflict with *Pierce* and would effectively allow a defendant to defeat the punishment intended by the Legislature. *Cf. Batchelder,* 442 U.S. at 125, 99 S.Ct. 2198 ("Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of [the] indictment and prosecution, neither is he [or she] entitled to choose the penalty scheme under which he [or she] will be sentenced.").

{37} We conclude that vehicular homicide is a lesser offense than child abuse resulting in death. Because the Legislature did not intend to create separately punishable offenses with Section 30–6–1(C) and Section 66–8–101 for one death, the district court must vacate the four counts of the lesser offense of vehicular homicide that merge into the four counts of child abuse resulting in death.[6]

---

6. We note that the Court of Appeals also vacated Defendant's conviction of DWI because that crime was a lesser included offense of vehicular homicide. *Santillanes,* 2000–NMCA–017, ¶ 15, 128 N.M. 752, 998 P.2d 1203. The reversal of

## VI. Conclusion

{38} We conclude that the general/specific statute rule does not apply in this case. The crime of vehicular homicide does not operate as an exception to the crime of child abuse resulting in death to the extent of compelling the State to prosecute under the vehicular homicide statute for cases involving the operation of a vehicle. When there is a violation of the double jeopardy protection against multiple punishments, the appropriate remedy is to vacate the conviction for the lesser offense. As a result, we remand this case to the district court with instructions to vacate the four counts of vehicular homicide with respect to the same victims as the four counts of child abuse resulting in death. We affirm Defendant's convictions of child abuse resulting in death.

{39} **IT IS SO ORDERED.**

WE CONCUR: JOSEPH F. BACA, Justice, PETRA JIMENEZ MAES, Justice,

GENE E. FRANCHINI, Justice (dissenting).

PAMELA B. MINZNER, Justice (dissenting).

MINZNER, Justice (dissenting)

{40} I respectfully dissent. I would affirm the Court of Appeals, but for different reasons than those articulated in its opinion in *State v. Santillanes,* 2000–NMCA–017, 128 N.M. 752, 998 P.2d 1203, *cert. denied,* 128 N.M. 689, 997 P.2d 821 *and cert. granted,* 128 N.M. 690, 997 P.2d 822 (2000). I believe that the language, purpose, subject matter, and history of the relevant statutes all indicate that Defendant's convictions for child abuse resulting in death, contrary to NMSA 1978, § 30–6–1(C)(1) (1989, prior to 1997 amendment), should be vacated.

{41} The panel of the Court of Appeals that decided *Santillanes* and the members of this Court all agree that the Legislature did not intend multiple punishments on these

---

Defendant's vehicular homicide convictions based on double jeopardy obviates this ruling by the Court of Appeals, and the district court need not vacate the DWI conviction.

facts and that the question on appeal is which convictions should be vacated: the convictions for child abuse resulting in death, contrary to Section 30–6–1(C)(1), or the convictions for vehicular homicide, contrary to NMSA 1978, § 66–8–101(C) (1991). We also all agree that the Legislature's intent should control. That is, if the Legislature would have intended that Defendant be punished for child abuse resulting in death, then those convictions should stand and Defendant's convictions for vehicular homicide should be vacated. If, however, the Legislature would have intended that Defendant be punished for vehicular homicide, then those convictions should stand and Defendant's convictions for child abuse resulting in death should be vacated. We have not been able to reach consensus on this Court, however, on the appropriate starting point for analyzing this case nor on the proper application of the double jeopardy clause.

{42} It seems to me that the starting point for our analysis should be the double jeopardy clause, see U.S. Const. amends. V, XIV, N.M. Const. art. II, § 15, because the State has conceded at the outset that a double jeopardy violation exists, and because the Court of Appeals only reached the question of whether the vehicular homicide statute preempted the child abuse statute following its determination that the double jeopardy clause required Defendant's vehicular homicide convictions to be vacated. See Majority Opinion, ¶ 9; Santillanes, 2000–NMCA–017, ¶ 9, 128 N.M. 752, 998 P.2d 1203. It further seems to me that the starting point for our analysis under the double jeopardy clause is the language of the vehicular homicide and child abuse statutes, particularly the core language that creates the two offenses. Section 66–8–101(C) punishes the commission of "homicide by vehicle ... while under the influence of intoxicating liquor." Section 30–6–1(C)(1) punishes the placing of children "in a situation that may endanger the child's life or health." If we compare these terms, the vehicular homicide statute is more specific to Defendant's conduct than the child abuse statute. Defendant committed four homicides, killing four children by driving his car while under the influence of intoxicating liquor. The greater specificity of the vehicular homicide statute demonstrates to me that the Legislature focused on the conduct of which Defendant has been convicted when it enacted the vehicular homicide statute. We have no indication, based on the language of the child abuse statute, that the Legislature focused on that conduct when it enacted the child abuse statute.

{43} Examination of more of the language of the vehicular homicide statute and its companion statute, NMSA 1978, § 66–8–101.1 (1985), further supports my belief that the Legislature would have considered Defendant's conduct vehicular homicide. Section 66–8–101.1 punishes as a third-degree felony the act of driving while intoxicated when it results in injury to a pregnant woman such that a miscarriage or stillbirth occurs. Section 66–8–101(A) defines homicide by vehicle as the killing of a human being. Viewed together, the two statutes create a comprehensive scheme that punishes as a third-degree felony the death of an adult or child, or a stillbirth or miscarriage resulting from vehicular homicide. Construing the child abuse statute to apply to Defendant's conduct would upset this scheme by making the death of a child by vehicular homicide a first-degree felony. The Court of Appeals "[did] not believe that the Legislature intended that the death of a child between birth and eighteen years of age should result in different and considerably greater punishment than the death of an unborn child or an adult, when the conduct causing the death, driving while intoxicated, is the same." Santillanes, 2000–NMCA–017, ¶ 12, 128 N.M. 752, 998 P.2d 1203. I, too, do not believe that the Legislature intended such a result.

{44} In fact, examination of more of the language of the child abuse statute leads me to believe that the Legislature has created an overlap it did not foresee. Section 30–6–1(C) articulates three circumstances that constitute child abuse: (1) placing a child in a situation that may endanger the child's life or health; (2) torture or cruel confinement or cruel punishment of a child; and (3) exposure of a child to inclement weather. If the Legislature had intended for the phrase "placing a child in a situation that may endanger the child's life or health" to be broadly construed,

there would be no need to punish specifically torture, cruel confinement, cruel punishment, or exposure of a child to inclement weather, because these acts place a child in a situation that may endanger the child's life or health. In other words, a very broad construction of the child endangerment language of the statute would render superfluous the specific enumerations contained in subsections (C)(2) and (C)(3). We do not construe statutes in a manner that renders other parts of the same statute superfluous. *See Katz v. New Mexico Dep't of Human Servs.*, 95 N.M. 530, 534, 624 P.2d 39, 43 (1981) ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous."). Therefore, it seems sensible to me to conclude that subsection (C)(1) was not intended to capture all conduct that might fit its statutory definition, but rather was worded broadly in an attempt to leave prosecutors in a position to punish acts of child abuse, similar to those enumerated in subsections (C)(2) and (C)(3), upon which the Legislature did not focus at the time of enactment.

{45} Examination of other parts of the criminal code further indicates that the Legislature did not contemplate that Section 30–6–1(C)(1) would encompass the entire universe of conduct involving harm or risk of harm to children. New Mexico's criminal sexual-penetration statute, NMSA 1978, § 30–9–11(C),(D) (1995), for example, specifically punishes criminal sexual penetration of children under thirteen years of age and criminal sexual penetration of children between the ages of thirteen and sixteen under certain circumstances. Further, New Mexico's sexual-exploitation-of-children statute, NMSA 1978, § 30–6A–3 (1993), and sexual-exploitation-of-children-by-prostitution statute, NMSA 1978, § 30–6A–4 (1989), specifically punish acts of sexual exploitation committed against children. Section 30–6–1(C)(1) might have been construed broadly enough to make these offenses superfluous, because the crimes these provisions punish also may endanger a child's life or health. In enacting these provisions, the Legislature seems to me to have indicated that it was providing more protection, and thus that it deemed Section 30–6–1(C)(1) to protect against something else.

{46} Lastly, the history of the vehicular homicide and child abuse statutes reveals one statute that has remained relatively constant in coverage and another that has expanded slowly but steadily. Until recently, there was no overlap. A vehicular homicide statute was first enacted in 1953. *See State v. Yarborough*, 1996–NMSC–068, ¶ 28, 122 N.M. 596, 930 P.2d 131. At that time, the precursor of our current child abuse statute specifically punished abandonment, rather than child abuse, enhancing the penalty if abandonment caused death. *See* 1925 N.M. Laws, ch. 108, §§ 1, 2 (codified as NMSA 1953, § 40–2–1, –2). A comparison of these statutes indicates that the 1953 New Mexico Legislature would have considered Defendant's actions to be vehicular homicide. The vehicular homicide statute was repealed in 1957 and reenacted in 1969. *See Yarborough*, 1996–NMSC–068, ¶ 28, 122 N.M. 596, 930 P.2d 131. At that time, our statutes continued to punish abandonment specifically, rather than child abuse. *See* 1963 N.M. Laws, ch. 303, §§ 6–1, –2 (codified as NMSA 1953, Repl.Vol. 6 (1964), § 40A–6–1, –2). A comparison of these statutes indicates that in 1969, the New Mexico Legislature would have considered Defendant's actions to constitute vehicular homicide. In 1973, the Legislature amended Section 40A–6–1 to punish child abuse more generally. *See* 1973 N.M. Laws, ch. 360, § 10 (originally codified as NMSA 1953, 2d. Repl.Vol. 6 (1964), § 40A–6–1 (Supp.1973), then codified as § 30–6–1). The Legislature did not change the vehicular homicide statute. We have little or no basis for determining that the Legislature modified the crime of vehicular homicide by implication in 1973. I think it more likely that in 1973 the Legislature broadened the child abuse statute without ever considering the possibility that the death of a child resulting from a driving offense could constitute child abuse resulting in death.

{47} The Court of Appeals did not conduct a detailed inquiry into the language, history, and purpose of these statutes under the double jeopardy clause because it believed that our opinion in *State v. Pierce*, 110 N.M. 76, 86–87, 792 P.2d 408, 418–19 (1990), established the proposition that a lesser offense,

as measured by the degree of felony, must be vacated in favor of the greater offense. *Santillanes*, 2000–NMCA–017, ¶ 9, 128 N.M. 752, 998 P.2d 1203. I am not persuaded that *Pierce* establishes this proposition. In *Pierce*, the defendant had been convicted of first-degree murder and child abuse resulting in death based on one homicide. In vacating Defendant's conviction for child abuse resulting in death, we reasoned that: (1) child abuse resulting in death was a lesser-included offense of first-degree murder based on the facts of the case, and (2) a long-standing principle of double jeopardy jurisprudence requires that a conviction for a lesser-included offense be vacated in favor of a greater, inclusive offense. *Pierce*, 110 N.M. at 86, 792 P.2d at 418. The latter principle exists in our jurisprudence because the existence of greater-inclusive/lesser-included offenses gives us insight into the Legislature's intent. Where one statute includes all elements of another statute and differs from the lesser-included statute by virtue of an additional element, we can infer that the Legislature intended the more inclusive statute to cover instances in which the additional element was present. This double jeopardy principle does not apply when each offense includes an element that the other does not.

{48} Any general use of the concepts of "greater" and "lesser" offenses seems to me misleading, rather than helpful, in the double jeopardy context. The existence of greater-inclusive/lesser-included offenses is determined by the elements of offenses, not by the degree of felony. I think a general use of the concepts of "greater" and "lesser" offenses ought not replace a detailed inquiry into legislative intent in analyzing a double jeopardy issue.

{49} For these reasons, I believe that the Legislature intended that a person in Defendant's situation be punished for vehicular homicide. Although I am persuaded that we should so interpret the Legislature's intent, I also acknowledge that reasonable minds can and do differ in determining the Legislature's intent in this case. I would therefore

reach the same result by application of the rule of lenity. *See Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) (stating that the rule of lenity "provides a time-honored interpretive guideline when the [legislative] purpose is unclear"); *see also State v. Anaya*, 1997–NMSC–010, ¶ 32, 123 N.M. 14, 933 P.2d 223 (applying the rule of lenity where the Court concluded that legislative intent to apply the habitual offender statute to felony DWI convictions was unclear notwithstanding the language of the statutes); *State v. Begay*, 2001–NMSC–002, ¶ 9, 130 N.M. 61, 17 P.3d 434 (same).

{50} I am persuaded on these grounds that Defendant's convictions for child abuse resulting in death should be vacated. A majority of this Court being of a different view, I respectfully dissent.[1]

FRANCHINI, Justice (dissenting)

{51} I share the concerns raised by Justice Minzner and concur in her dissent. I write separately to reiterate my opinion, expressed in my dissent in *State v. Guilez*, 129 N.M. 240, 4 P.3d 1231, 2000–NMSC–020, ¶¶ 27–36, that the Motor Vehicle Code preempts the child abuse statute under *Yarborough*, 1996–NMSC–068 ¶¶ 26–29, 122 N.M. 596, 930 P.2d 131.

{52} I also believe that the majority opinion misapplies the general/specific rule. I agree with the majority that "if two statutes dealing with the same subject conflict, then the more specific statute will prevail over the more general statute. . . ." Majority Opinion ¶ 7. In my view, application of that rule necessitates the dismissal of the child abuse convictions rather than vehicular homicide convictions, as the majority holds. The vehicular homicide statute prohibits "the killing of a human being in the unlawful operation of a motor vehicle." NMSA § 66–8–101(A). The relevant section of the child abuse stat-

---

1. Because I conclude that the Court of Appeals erred in analyzing our double jeopardy cases and in determining that under those cases Defendant's vehicular homicide convictions would

have been vacated, I do not reach the question of whether the vehicular homicide statute preempts the child abuse statute under the general/specific rule.

ute criminalizes "causing or permitting a child to be placed in a situation that may endanger the child's life or health." NMSA § 30–6–1(C). Because I believe that the vehicular homicide statute addresses Defendant's criminal conduct with greater specificity, I would uphold the convictions based on that statute rather than the convictions based on the less specific child abuse statute.