This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                            **No. A-1-CA-33812**

**LORENZO VELARDE,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1} Lorenzo Velarde (Defendant) appeals from five counts of criminal conviction that resulted from two separate trials regarding his participation as an accessory in a fatal drive-by shooting in the Albuquerque south valley. We reject the bulk of Defendant's arguments and affirm all but one of his convictions; reversing his conviction for resisting, evading, or obstructing an officer. In reliance on New Mexico precedent, we reject Defendant's remaining double jeopardy contentions and hold that sufficient evidence was presented at the two separate trials to support each of the jury's verdicts. We also conclude that Defendant's second trial did not subject Defendant to double jeopardy for successive prosecutions and that the district court did not commit: (1) instructional error, (2) error in permitting the State's gang expert to testify, (3) error in finding Defendant was not amenable to treatment, or (4) error in denying a new trial based on juror misconduct.

**BACKGROUND**

{2} A week prior to the shooting on October 29, 2009, Defendant had an encounter with John Valenzuela (Decedent) and Dominic Llamas, which led to a physical altercation between Defendant and Llamas. On the day of the shooting, Defendant was driving his car with Roberto Gonzales in the front passenger seat and two other passengers in the back seat. Upon seeing Decedent, Llamas, and Anthony Smith playing football on Cordelia Street, Defendant specifically pointed out one of the

3

males in the street as someone Defendant had argued with. Gonzales then made a comment indicating that he wanted to fight someone. Subsequently, words and gang-related challenges were exchanged between Gonzales and Smith.

{3}      As Smith moved toward the car to strike Gonzales, Defendant drove away, made a turn on Bernice Street, and then drove back toward the location of the shooting on Cordelia Street. Seconds elapsed before the car driven by Defendant returned to the vicinity of Decedent, Llamas, and Smith. Defendant stopped his vehicle near a mailbox at the corner of Cordelia and Bernice Streets. When Defendant pulled up to the mailbox, Gonzales was already leaning out of the passenger window holding a firearm. Defendant cocked it, fired two shots at Smith, and fired approximately six more shots at the other individuals in the street. Gonzales fired the shots in rapid succession. Decedent was struck by two bullets and subsequently died from a gunshot wound to his chest.

{4}      After the shooting, Defendant fled from the scene at a high rate of speed. While on patrol, Deputy Hix made contact with Defendant's car, which was stopped at a stop light, by placing his vehicle by the front left corner of Defendant's car. After engaging his emergency lights, Deputy Hix opened his door to give Defendant verbal commands. Defendant backed his car up and sped forward on the dirt shoulder. After a pursuit that extended several miles, Defendant's car jumped a curb and came to a

stop. Defendant immediately got out of his car and fled on foot and jumped a fence, but he was ultimately apprehended in approximately 10 seconds.

**SUMMARY OF PROCEEDINGS**

{5}     Defendant was originally indicted by a grand jury on the following thirteen counts: Count 1: open count of murder (first and second degree); Count 2: conspiracy to commit murder; Count 3: felony murder; Count 4: conspiracy to commit felony murder; Count 5: shooting at or from a motor vehicle (great bodily harm); Count 6: conspiracy to commit shooting at or from a motor vehicle (great bodily harm); Count 7: shooting at a dwelling or occupied building (no injury); Count 8: intentional child abuse (no death or great bodily harm); Counts 9, 10, and 11: aggravated assault (deadly weapon) (firearm enhancement); Count 12: aggravated fleeing a law enforcement officer; and Count 13: resisting, evading or obstructing an officer.

{6}     In his first trial, Defendant was acquitted by jury verdict on Count 1, first and second degree murder, and convicted on Counts 12 and 13, aggravated fleeing a law enforcement officer and resisting, evading or obstructing an officer. The jury was unable to come to a verdict on the remaining counts, and the district court declared a mistrial.

{7} Defendant's second trial resulted in jury convictions on Count 5, shooting at or from a motor vehicle (great bodily harm); Count 6, conspiracy to commit shooting at or from a motor vehicle (great bodily harm); and Counts 9 and 10, aggravated assault (deadly weapon) (firearm enhancement). Upon a jury finding that a firearm was used in the aggravated assaults, the district court enhanced each sentence by one year, pursuant to NMSA 1978, Section 31-18-16(A) (1993). Further, the district court merged for sentencing Count 6, conspiracy to commit shooting at or from a motor vehicle (great bodily harm) with Count 5, shooting at or from a motor vehicle (great bodily harm), imposing no sentence for Count 6. After suspension of one year and 181 days, Defendant was sentenced to 15 years in the New Mexico Corrections Department.

**DISCUSSION**

**A.    Double Jeopardy**

{8}    We begin our analysis by reviewing Defendant's contentions that some of his convictions violate the double jeopardy clauses of the United States and New Mexico Constitutions. This Court reviews double jeopardy issues de novo. *State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289.

{9}    Double jeopardy affords a criminal defendant three types of distinct protection. "It protects against a second prosecution for the same offense after acquittal. It

protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223 (internal quotation marks and citation omitted). This appeal, in part, relates to the third layer of protection, which has been further divided into two categories: unit of prosecution cases, "in which a defendant has been charged with multiple violations of a single statute based on a single course of conduct," and double description cases, "in which a defendant is charged with violations of multiple statutes for the same conduct[.]" *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. Defendant maintains that the protection against multiple punishments for the same offense bars: (1) his conviction for resisting, evading or obstructing an officer; (2) imposition of the firearm enhancements for each of the two aggravated assault convictions; (3) his conviction for conspiracy to commit shooting at or from a motor vehicle (great bodily harm); and (4) his two convictions for aggravated assault. Defendant also maintains that his second trial violated the first layer of protection under *Swafford*—successive prosecutions after acquittal. We now turn to the analysis for each.

**1. Defendant's Conviction for Aggravated Fleeing and Resisting, Evading or Obstructing an Officer Violated His Double Jeopardy Rights**

{10}    Defendant argues that his conviction for aggravated fleeing and resisting, evading or obstructing an officer is a double description case based on unitary

6

conduct. "When determining whether [the d]efendant's conduct was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *DeGraff*, 2006-NMSC-011, ¶ 27 (internal quotation marks and citation omitted). "Conduct is unitary when not sufficiently separated by time or place, and the object and result or quality and nature of the acts cannot be distinguished." *State v. Silvas*, 2015-NMSC-006, ¶ 10, 343 P.3d 616.

{11} Defendant argues and the State concedes that Defendant's conduct in fleeing was unitary conduct. We agree. In *State v. Padilla*, 2006-NMCA-107, ¶¶ 24, 35, 140 N.M. 333, 142 P.3d 921, *rev'd on other grounds by* 2008-NMSC-006, 143 N.M. 310, 176 P.3d 299, we held that resisting, evading or obstructing an officer is a lesser included offense of aggravated fleeing. As the *Padilla* Court held, "[W]e conclude that there are no indications of any legislative intent to allow multiple punishments for misdemeanor resisting/evading and aggravated fleeing when there is unitary conduct." *Id.* ¶ 35. This issue was amply covered in *Padilla*. We therefore vacate Defendant's conviction for the lesser offense, misdemeanor resisting/evading, and retain the conviction for the greater offense, felony aggravated fleeing. *See State v. Santillanes*, 2001-NMSC-018, ¶ 37, 130 N.M. 464, 27 P.3d 456.

**2.    The Firearm Enhancements to Defendant's Sentences Did Not Violate His Double Jeopardy Rights**

7

{12} The district court sentenced Defendant to an additional year of incarceration pursuant to Section 31-18-16(A) for each count of aggravated assault (deadly weapon). Defendant appeals the enhancements of his sentence. Our Supreme Court recently held in *State v. Baroz*, ___-NMSC-___, ¶¶ 20-27, ___ P.3d ___ (No. S-1-SC-34839, Oct. 5, 2017) that a conviction for aggravated assault (deadly weapon) and an enhancement of that sentence pursuant to Section 31-18-16(A) does not violate double jeopardy. The firearm enhancements to Defendant's convictions in Counts 9 and 10 are therefore affirmed.

**3. Shooting at or From a Motor Vehicle (Great Bodily Harm) and Conspiracy to Commit Shooting at or From a Motor Vehicle (Great Bodily Harm)**

{13} Defendant appeals his conviction for conspiracy to commit shooting from a motor vehicle causing great bodily harm, arguing that it violates his right to be free from multiple punishments for a single act. As a preliminary matter, the State assumes and Defendant argues that his conduct as an accessory was unitary. We agree. While Defendant engages in a lengthy analysis relative to his unitary conduct as an accessory regarding his conviction for shooting from a motor vehicle, he fails to note that the district court merged the conspiracy count for concurrent sentencing, imposing only a sentence for shooting from a motor vehicle. Under these circumstances, merging the convictions does not violate double jeopardy; however failure to vacate the conspiracy

conviction does. We direct that the district court enter an order vacating Defendant's conviction as to Count 6. "[D]ouble jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated." *Santillanes*, 2001-NMSC-018, ¶ 28. A double jeopardy violation is not rendered harmless by concurrent sentencing. *State v. Mora*, 2003-NMCA-072, ¶ 27, 133 N.M. 746, 69 P.3d 256

**4.      Defendant's Convictions for Aggravated Assault Do Not Violate His Double Jeopardy Rights**

{14}      We perceive Defendant's contention on appeal to be a challenge to his two aggravated assault convictions based on his unitary conduct as an accessory. Defendant maintains that while he "arguably could have aided in a shooting from a motor vehicle," insufficient evidence exists that he was a party to Gonzales' decision to shoot at the other individuals in the street, and therefore, "he cannot be separately convicted for the aggravated assaults." We disagree.

{15}      Our accessory liability statute provides, in pertinent part, that "[a] person may be charged with and convicted of the crime as an accessory if he procures, counsels, aids or abets in its commission . . . although he did not directly commit the crime[.]" NMSA 1978, § 30-1-13 (1972). Being an accessory is not a distinct offense, but is instead linked to the actions of the principal. *State v. Carrasco*, 1997-NMSC-047, ¶ 6, 124 N.M. 64, 946 P.2d 1075. An accessory must share the criminal intent of the

9

principal, and this intent may be inferred "from behavior which encourages the act." *Id.* ¶ 7.

{16}    Defendant's two aggravated assault convictions represent a *Swafford* unit of prosecution case—one in which the Defendant has been charged with multiple violations of a single statute based on a single course of conduct. Here, two distinct victims, Decedent and Smith, were assaulted by Defendant's unitary acts as an accessory. This Court's precedent in *State v. Roper*, 2001-NMCA-093, 131 N.M. 189, 34 P.3d 133, is dispositive. "[I]t is therefore permissible without offending double jeopardy principles to convict and sentence a defendant for two counts of assault for pointing a gun at two persons at the same time." *Id.* ¶ 12.

**5.     Defendant's Second Trial Was Not a Successive Prosecution Implicating Double Jeopardy**

{17}    Defendant maintains that his second trial on the charges of shooting from a motor vehicle and aggravated assault violate his double jeopardy rights. Defendant argues that our Supreme Court's holding in *State v. Montoya*, 2013-NMSC-020, ¶ 27, 306 P.3d 426, precludes his successive trial on these charges, as Defendant was acquitted in the first trial of first degree and second degree murder, and that shooting from a motor vehicle resulting in death, is a lesser included offense of murder. The State argues that (1) Defendant misapplies *Montoya*'s holding; and (2) in Defendant's first trial, he was never convicted or acquitted of shooting from a motor vehicle

resulting in death or aggravated assault, as the jury hung on these charges. We agree with the State.

**{18}** In the first trial, the district court declared a mistrial on these and the other remaining charges in the indictment, reserving the power to retry Defendant.

**{19}** Defendant's second trial does not implicate double jeopardy concerns where the first trial resulted in a mistrial. "It is well established in New Mexico that double jeopardy principles are not implicated when a defendant is brought to trial a second time following a mistrial in which the jury could not reach a verdict on a particular count." *State v. Martinez*, 1995-NMSC-064, ¶ 4, 120 N.M. 677, 905 P.2d 715. When analyzing the contours of a mistrial, the "second trial is considered a continuation of the first, and the defendant is thus placed in jeopardy only once." *Id.*; *see State v. Collier*, 2013-NMSC-015, ¶¶ 1, 14, 301 P.3d 370 (explaining that retrial on the lesser included charge was allowed after the jury acquitted on greater inclusive charge where the jury hung on lesser charge and jeopardy was therefore not terminated).

**{20}** Thus, Defendant's reliance on *Montoya's* holding is inapposite. *See id.* ¶ 54 (holding that the Double Jeopardy Clause protects against one being punished both for homicide and causing great bodily harm "by shooting [from] a motor vehicle, where both convictions were premised on the unitary act of shooting [the decedent; therefore o]ne of the convictions must be vacated"). Defendant was neither convicted

nor acquitted as the jury could not agree on these counts and therefore his double jeopardy rights were not violated.

**B.      There Was No Instructional Error**

{21}      Defendant raises fundamental error in regard to the instructions for aggravated assault, accessory liability, and aggravated fleeing. Defendant did not object to the tendered instructions. We therefore review Defendant's unpreserved claims of error for fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176. We conduct a two-part inquiry in reviewing for fundamental error: (1) applying the standard for reversible error to determine juror confusion or misdirection from the instructions given; and (2) if we determine juror confusion or misdirection, we then review the entire record, placing the instructions given in context with the facts and circumstances of the case, to determine whether the defendant's convictions were the result of a plain miscarriage of justice. *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306. Absent a miscarriage of justice, there is no fundamental error. *Id*. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997-NMSC-045, ¶ 41, 124 N.M. 55,

946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783.

{22} We focus first on the accessory liability instruction given. As noted above, being an accessory is not a distinct offense, but is instead linked to the actions of the principal. Defendant may be convicted of the crime as an accessory if he procures, counsels, aids, or abets in its commission, although he did not directly commit the crime.

{23} The district court properly gave the UJI 14-2822 NMRA accessory to crime instruction. The instruction provides in pertinent part, that:

> [D]efendant may be found guilty of a crime even though he himself did not do the acts constituting the crime, if the [S]tate proves to your satisfaction beyond a reasonable doubt that:
>
> 1.  [D]efendant intended that the crime be committed;
>
> 2.  The crime was committed;
>
> 3.  [D]efendant helped, encouraged or caused the crime to be committed.

*See* UJI 14-2822. The instruction given was the language of UJI 14-2822 verbatim. We hold Defendant's argument that the conjunctive "and" should have been inserted between the three elements is without merit. The accessory instruction required that the jury determine that Defendant intended that the crime be committed, and the jury so found beyond a reasonable doubt. Thus, the jury having found beyond a reasonable

13

doubt that the Defendant intended the crime be committed aids our analysis in regard to Defendant's claim of error relative to the aggravated assault instructions.

{24} In regard to the aggravated assault instructions, Defendant makes two arguments. First, the instructions given did not contain the requisite *mens rea*, and, second, the jury was not instructed on general criminal intent relative to aggravated assault. Defendant concedes that the jury was instructed on general criminal intent as applied to shooting from a motor vehicle. Above, we determined that there was only one unitary act of shooting into the crowd by Gonzales. The accessory instruction required that the jury find Defendant "intended that the [aggravated assaults (deadly weapon)] be committed" beyond a reasonable doubt. *See* UJI 14-2822. The jury was properly instructed on general intent and purposeful conduct, albeit in the context of shooting from a motor vehicle. Both jury instructions on aggravated assault (deadly weapon) required the jury to find beyond a reasonable doubt that Defendant engaged in purposeful conduct. Our Supreme Court in *State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230, recently confirmed that we need not conclude that there was fundamental error despite the court's failure to instruct on an essential element where the jury's findings, in light of the undisputed evidence in the case, necessarily establish that the omitted element was met beyond a reasonable doubt. Our review of the entire record, the jury instructions given, the jury's findings beyond a reasonable

doubt, and the absence of juror confusion or misdirection leads us to conclude there was no fundamental error.

{25}     We hold that the jury instruction for aggravated fleeing did not result in a miscarriage of justice. The evidence supporting the jury's conviction for aggravated fleeing was substantial and undisputed at trial. Defendant alleges that the instruction omits the requirement found in the statute, requiring that he drive "willfully and carelessly . . . endanger[ing] the life of another person *after being given* a visual or audible signal to stop[.]" NMSA 1978, § 30-22-1.1(A) (2003) (emphasis added). Defendant contends that by failing to include the "*after being given*" language, the instruction contained fundamental error. We find Defendant's argument unavailing. As given, the instruction tracked the language of UJI 14-2217 NMRA verbatim. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 (explaining that UJIs are presumed to be a correct statement of the law). Element 3 of the aggravated fleeing instruction as given, required the jury to find beyond a reasonable doubt that "[D]efendant had been given a visual or audible signal to stop." We conclude that this was sufficient to satisfy all the essential elements of the statute. *See State v. Cawley*, 1990-NMSC-088, ¶ 16, 110 N.M.705, 799 P.2d 574 ("Generally, an instruction that parallels the language of the statute and contains all essential elements of the crime is sufficient.").

## C. Sufficient Evidence Supports Defendant's Convictions

**{26}** "The sufficiency of the evidence is reviewed pursuant to a substantial evidence standard." *State v. Treadway*, 2006-NMSC-008, ¶ 7, 139 N.M. 167, 130 P.3d 746. When reviewing a challenge to the sufficiency of the evidence, we determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. "[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. "In our determination of the sufficiency of the evidence, we are required to ensure that a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{27}** We have previously concluded that sufficient evidence of both a direct and inferential nature exists to support a jury verdict that Defendant shared Gonzales' intent as an accessory. We pointed out that there was only one unitary act of shooting

into the crowd by Gonzales. Sufficient evidence supports Defendant's convictions as an accessory for the crimes of shooting from a motor vehicle (great bodily harm) and two counts of aggravated assault (deadly weapon). None of Defendant's arguments to the contrary persuade us to reach a contrary conclusion.

**D.  The District Court Did Not Abuse Its Discretion in Allowing the State's Gang Expert to Testify**

{28}  We review the district court's admission of expert testimony under an abuse of discretion standard. "The rule in this [s]tate has consistently been that the admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 1993-NMSC-047, ¶ 58, 116 N.M. 156, 861 P.2d 192.

{29}  Defendant appears to argue that Detective Matthew Wolke, the State's gang expert, based his testimony on hearsay, that he did not keep contemporaneous records, and that he allegedly used the internet to verify information, all without citation to the record. The State points to Detective Wolke's prior experience and specialized training with gangs in New Mexico, as well as his personal involvement in investigating the instant case.

{30}  We are unable to find that the district court's admission of the expert testimony was clearly against the logic and effect of the facts and circumstances of the case. "An abuse of discretion occurs when the ruling is clearly against the logic and effect

17

of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted). This Court will not search the record to find whether an issue was preserved where the defendant did not refer the court to appropriate transcript references. *Id.* ¶ 44.

**E.     The District Court Did Not Abuse Its Discretion in Finding That Defendant Was Not Amenable to Treatment**

{31}     A district court's amenability determination is reviewed for an abuse of discretion. *State v. Todisco*, 2000-NMCA-064, ¶¶ 36-37, 129 N.M. 310, 6 P.3d 1032. Defendant raises undeveloped arguments under NMSA 1978, Section 32A-2-20 (2009) (disposition of a youthful offender) relative to the district court's invocation of an adult sentence, and without citation to the appropriate transcript references. The appellate courts are under no obligation to review unclear or undeveloped arguments. *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031. The State responds with specific citation to the record, pointing out the district court's findings pursuant to Section 32A-2-20(B). As stated above, the appellate courts will not search the record to find whether an issue was preserved where the defendant did not refer to appropriate transcript references. *See Rojo*, 1999-NMSC-001, ¶ 44. Based on our review of the State's citation to the record and the district court's findings relative to

18

Defendant's non-amenability to treatment, we conclude that the district court did not abuse its discretion in finding that Defendant was not amenable to treatment.

**F.      The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion for a New Trial**

{32}      On appeal, defense counsel has the duty to advance a defendant's non-meritorious contentions. *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982; *State v. Boyer*, 1985-NMCA-029, ¶ 24, 103 N.M. 655, 712 P.2d 1. After his second trial, Defendant filed a motion for a new trial alleging juror misconduct, which the district court properly denied. The gravamen of the motion was to the effect that a juror had contacted Defendant's trial counsel and alleged that he was pressured into finding Defendant guilty. The juror in question did not file an affidavit or testify before the district court. The district court found that the motion was untimely filed and would have the effect of invading the province of the jury. We agree. Our review of the record indicates that when the district court polled the jury, the juror in question acknowledged that the jury verdicts represented his individual verdicts. Defendant's motion for a new trial was properly denied.

**CONCLUSION**

{33}      In summary, we affirm all but two of Defendant's convictions, vacate his convictions for resisting, evading or obstructing an officer and conspiracy to shoot

from a motor vehicle, and remand the case to the district court to resentence Defendant accordingly.

{34}     **IT IS SO ORDERED.**

        _____

        **STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**HENRY M. BOHNHOFF, Judge**