This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**NO. A-1-CA-37005**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**RAKEEM HOLLAND,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Defendant, Rakeem Holland, appeals his conviction for unlawful taking of a motor vehicle, pursuant to NMSA 1978, Section 30-16D-1 (2009). Defendant makes four arguments: (1) the omission of the essential element of a mistake of fact defense in the jury instruction for unlawful taking of a motor vehicle constituted fundamental error; (2) the district court improperly excluded witness testimony; (3) the evidence was

insufficient to support the conviction; and (4) the State should have charged Defendant with embezzlement of a motor vehicle, pursuant to NMSA 1978, Section 30-16D-2 (2009). We affirm.

## Background

**{2}** The following testimony was elicited at Defendant's trial. After an argument with his sister, Shanea Martin, at her home on March 4, 2016, Defendant drove away in a Dollar Cab (Cab). The Cab was owned by James Moore and assigned to Jasmine Joseph, an independent contractor of Dollar Cab and girlfriend of Martin. Shortly after driving away, Defendant abandoned the Cab approximately one mile from his destination, leaving the keys on the hood of the vehicle. It is unclear who called the police; however, an officer was dispatched to the Martin residence in response to a report of a disturbance. Upon arriving at Martin's home, Detective Kyle Graham found the living room was "destroyed" and he sent a "be-on-the-lookout" for Defendant and the Cab. Detective Graham subsequently located Defendant at his mother's residence, arrested Defendant, and read him his rights. Defendant admitted to Detective Graham that he had driven the Cab from Martin's residence to the location where he abandoned it.

**{3}** The State presented evidence that Defendant took the Cab without Moore's permission. Defendant testified and acknowledged that neither Moore nor Joseph had given him permission to take the Cab, but presented a mistake of fact defense, claiming that Martin had given him permission to take the vehicle. Defendant attempted to have Johnnie Holland, Defendant's estranged wife, testify that she was on the phone with him when she overheard Martin purportedly giving Defendant permission to take the vehicle. The State objected on hearsay grounds, and the district court sustained the objection, precluding Holland's proposed testimony. Neither Martin nor Joseph appeared for the trial as witnesses, despite the State's best efforts to get them there. The jury ultimately returned a guilty verdict. This appeal followed.

**{4}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of additional pertinent facts as they are necessary to our analysis.

## Discussion

### The District Court Did Not Commit Fundamental Error by Omitting a Mistake-of-Fact Instruction From the Essential Elements List Where a Corrective Instruction Was Provided

**{5}** Defendant argues that it was fundamental error for the jury instruction on unlawful taking of a motor vehicle to omit the defense of mistake of fact, which UJI 14-5120, use note 1 NMRA ("Ignorance or mistake of fact") directs should be incorporated into the essential elements of the offense at issue. Defendant concedes that the issue was not preserved. In the absence of preservation, the appellate court reviews jury

instructions for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. Fundamental error renders guilt so doubtful or open to question that it "would shock the judicial conscience to allow the conviction to stand." *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). The conscience of the court will be shocked where the defendant's innocence is obvious or where a mistake in the process "makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633. Fundamental error in jury instructions occurs where "a reasonable juror would have been confused or misdirected by the jury instruction." *Cunningham*, 2000-NMSC-009, ¶ 14 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. Although omission of an essential element of an offense ordinarily constitutes fundamental error, "jury instructions should be considered as a whole and a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element." *Cunningham*, 2000-NMSC-009, ¶ 21.

**{6}**     Here, jury instruction 5 instructed the jury as follows:

> For you to find [D]efendant guilty of unlawfully taking a motor vehicle as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant took [the Cab] without the owner's consent;
>
> 2. This happened in New Mexico on or about the 4th day of March, 2016.

Jury instruction "5a," proffered by Defendant and also submitted to the jury, immediately followed and provided:

> Evidence has been presented that [D]efendant believed that he was allowed to take the [C]ab of Jasmine Joseph. The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act under an honest and reasonable belief in the existence of those facts. If you have a reasonable doubt as to whether [D]efendant's actions resulted from a mistaken belief of those facts, you must find [D]efendant not guilty.

Additionally, during closing argument, defense counsel told the jury that instructions 5 and 5(a) "go together."

**{7}**     Jury instruction 5 properly mirrors UJI 14-1660 NMRA ("Unlawful taking of vehicle or motor vehicle; essential elements"), and jury instruction 5a mirrors UJI 14-5120. UJI 14-5120, use note 1, however, provides, "If this instruction is given, add to the

essential elements instruction for the offense charged, 'The defendant did not [act] . . . under a mistake of fact.' " It is clear that this statement was not added to jury instruction number 5. Defendant argues that the jury would have been confused or misdirected by this omission. Therefore, the question is whether the subsequent instruction adequately corrected the omission. We hold that it does.

**{8}** Defendant relies primarily on *Benally*, in which the defendant was charged with second-degree murder and tampering with evidence. 2001-NMSC-033, ¶ 1. The essential elements instruction for second-degree murder failed to include the element of unlawfulness; another instruction provided the incorrect burden for self-defense; and a third instruction, ten instructions later, provided the correct burden for self-defense, but not unlawfulness. *Id.* ¶¶ 11, 17. Our Supreme Court ultimately held that "because of its distance from the erroneous elements instruction and the unlikelihood that the jury would . . . graft language from a proper instruction onto improper instructions, the single proper instruction did not correct the improper self-defense instruction." *Id.* ¶ 1. On the other hand, our Supreme Court in *Cunningham* held that the failure to include the element of unlawfulness in the essential elements instruction for first-degree murder was not fundamental error, where it was corrected by a subsequent proper instruction, which eliminated the possibility of juror confusion on the matter. 2000-NMSC-009, ¶¶ 14, 22. The distinction is that in *Benally*, the first instructional error remained uncorrected by the following instructions; whereas in *Cunningham*, the instructional error was corrected by the very next instruction. This case presents the latter circumstance.

**{9}** Here, the mistake of fact instruction sufficiently corrected the improper instruction as it immediately followed the unlawful taking of a motor vehicle instruction, contained the correct standard, and directed the jury to find whether Defendant's belief was reasonable. Neither the content nor the location of the instruction would be likely to have confused the jury. Accordingly, there is no fundamental error.

**The District Court Did Not Abuse Its Discretion by Excluding Johnnie Holland's Testimony**

**{10}** Defendant argues that "[t]he [district] court improperly excluded . . . Holland's testimony regarding what she overheard." Specifically, he contends that the statements were not hearsay but were verbal acts which "gave [Defendant] permission to drive the [C]ab," and, alternatively, were admissible as a present sense impression. We disagree.

**{11}** "Admission or exclusion of evidence is a matter within the discretion of the [district] court and the court's determination will not be disturbed on appeal in the absence of a clear abuse of that discretion." *State v. Stampley*, 1999-NMSC-027, ¶ 37, 127 N.M. 426, 982 P.2d 477 (internal quotation marks and citation omitted); *see id.* (stating that we review "whether testimony is within exceptions to the hearsay rule for an abuse of discretion" (internal quotation marks and citation omitted)). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971

P.2d 829 (internal quotation marks and citation omitted). "All relevant evidence is generally admissible unless otherwise provided by law." *Stampley*, 1999-NMSC-027, ¶ 38 (citing Rule 11-402 NMRA). Relevant evidence is evidence that "tends to make a fact in issue more or less probable" and "any doubt should be resolved in favor of admissibility." *Id.* Relevant admissible evidence may still be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* "[T]he complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." *Id.* (internal quotation marks and citation omitted).

**{12}** Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted." Rule 11-801(C) NMRA (defining hearsay). A statement is a "verbal act" and not hearsay where it is "offered merely to prove that it was made, and not to prove truth." *State v. Ruiz*, 2007-NMCA-014, ¶ 36, 141 N.M. 53, 150 P.3d 1003 (holding that verbal acts were admissible to rebut an express or implied charge of recent fabrication or improper influence); *see Stampley*, 1999-NMSC-027, ¶¶ 39-41 (holding that verbal acts were admissible to rebut suggestions of bias and to prove reasonableness of an officer's actions).

**{13}** Here, after the State rested its case, Defendant called Holland as a witness to testify that while on the phone with Defendant, she heard Martin tell Defendant to "take the car." The State objected to Holland as a witness, arguing that her proposed testimony was irrelevant because there is no apparent authority doctrine in New Mexico, and a person "can't give consent to something you have no connection to, no authority to, no ability to give consent to." The district court overruled the objection, finding that the testimony was relevant and that the probative value outweighed the prejudice to the State. When Holland began to testify to the statement she heard over the phone, the State objected on hearsay grounds. Defense counsel argued that Holland's statement was not hearsay because "[Holland] is describing what [Martin] said and what [Martin] said is not hearsay. . . . Non-hearsay is simply the non-operative fact of what was said." This time, the court sustained the objection and defense counsel again tried to elicit Martin's alleged statement to Defendant through Holland. The State again objected on hearsay grounds. During a bench conference the following exchange took place:

| | |
|---|---|
| Defense counsel: | She is going to testify that she told [Defendant], take the keys and leave or words to that amount. |
| District court: | How is that not for the truth of the matter? |
| Defense counsel: | Judge, it's the fact that the statement was made, it's not for the truth of the matter asserted, it's the fact that the statement was made. |
| Prosecutor: | Judge, it is apparently only hearsay when I ask questions regarding what [Martin] said. They want their cake and to eat it too. [Martin] is not here, so you can't offer that as consent and permission. |
| District court: | How is it not being offered to prove her consent and permission to take the [Cab]? |

| Defense counsel: | Judge, she is telling him to take the keys and leave. |
| District court: | Do you want the jury to believe that she told him to take the keys and leave? |
| Defense counsel: | Mm-hmm, I do. |
| District court: | Okay, you can make your record, but it's sustained. |
| Defense counsel: | Judge it is a statement made not, there is no truth for it. It is an imperative, an injunction, . . . it is a statement made telling him to do something. |
| District court: | Okay sustained. |

**{14}** The court then allowed defense counsel to continue questioning Holland outside the presence of the jury to make a record. During testimony outside the presence of the jury, Holland stated:

> [Defendant and Martin] were arguing about who messed up whose family. [Martin] told [Defendant] he was stupid, then for [Defendant] to leave and then [Defendant] was like, "I'm not leaving, this is my house too, I live here." And [Martin's] like, "get the [pause] outta my house, you have the keys, now leave."

The district court found the statements were "absolutely being intended for the truth of what is asserted. So, it is hearsay." Defense counsel disagreed stating, "The fact that the statement was made, takes it out of the realm of hearsay." No further discussion occurred.

**{15}** To the extent that Defendant argues Holland's statement was improperly excluded because it was a non-hearsay verbal act that "gave [Defendant] permission to drive the Cab," we disagree. A statement that would be hearsay and inadmissible, may be admissible if offered for some other purpose than the truth of the matter asserted, such as proving the reasonableness of someone's actions, rebutting an impeachment, or rebutting an allegation of fabrication or improper influence. *Ruiz*, 2007-NMCA-014, ¶¶ 36-38; *Stampley*, 1999-NMSC-027, ¶¶ 39-41. Defendant cites *State v. McCave*, a Nebraska Supreme Court case, holding that a "non[-]hearsay purpose for offering a statement does exist when a statement has legal significance because it was spoken, independent of the truth of the matter asserted." 805 N.W.2d 290, 317 (Neb. 2011). However, in that case, the initial declarant held the power to grant a license to the defendant to be on the premises; therefore, the statement was legally operative and non-hearsay. *Id.* at 318.

**{16}** In this case, Martin did not possess any authority to give Defendant permission to take the Cab. "Actual authority is given to the agent by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent. . . . Apparent authority arises from manifestations by the principal to the third party." *Barron v. Evangelical Lutheran Good Samaritan Soc'y*, 2011-NMCA-094, ¶ 16, 150 N.M. 669, 265 P.3d 720 (internal quotation marks and citations omitted). Moore testified that on March 4, 2016, Martin did not have authority to drive the Cab, let alone give

permission to another to do so. Additionally, Defendant presented no evidence that any act or acts by Moore—such as seeing Martin driving the car and allowing her to do so— gave Martin apparent authority over the Cab. Thus, *McCave* is inapplicable.

**{17}**　We note as well that during the bench conference, Defendant initially argued that the statement was not being offered for the truth of the matter asserted. However, when asked by the district court, "Do you want the jury to believe that she told him to take the keys and leave?" Defense counsel responded affirmatively. Defense counsel never proffered a purpose other than demonstrating that Defendant had permission to take the Cab. In his brief in chief, Defendant also states, "The verbal act here gave [Defendant] permission to drive the [C]ab." These statements lead to the logical conclusion that the statement was not offered for another purpose, such as the Defendant's reasonableness in relying on the statement. Rather, it was offered to prove the truth of the matter: that, in fact, permission was given. This was exactly the district judge's conclusion and basis for sustaining the State's objection. Accordingly, the exclusion of Holland's testimony was not against the logic and effect of the facts and circumstances of the case, and therefore was not an abuse of discretion.

**{18}**　As a final matter, we decline to address Defendant's argument that the district court "misunderstood the rule on hearsay as excluding present sense impressions." In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. We do not review issues that were not before the district court. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). Defendant did not raise present sense impression as an exception to the hearsay rule at trial, and we do not consider the argument further.

**There Was Substantial Evidence for the Jury to Find Defendant Guilty**

**{19}**　Defendant argues that the evidence was insufficient to support a conviction for unlawful taking of a motor vehicle. We disagree.

**{20}**　"The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "In reviewing whether there was sufficient evidence to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2009-

NMCA-107, ¶ 21, 147 N.M. 150, 217 P.3d 1048 (internal quotation marks and citation omitted).

**{21}** To find Defendant guilty in this case, the jury had to find that Defendant "took [the Cab] without the owner's consent" and that Defendant "did not act under an honest and reasonable belief" that he was allowed to take the Cab.

**{22}** The State presented two witnesses, Moore and Detective Graham to prove its theory that Defendant took the Cab without permission after he had an altercation with Martin. Moore testified as follows. Moore has been the owner of Dollar Cab since 1993, and he hires contractors to drive the cabs. Moore owns the Cab at issue, which—like all of his cabs—was clearly marked on both sides with "Dollar Cab," the company phone number, and the State PRC number in vinyl lettering. Moore allowed drivers to take cabs home with them. However, it is against his company policy and the insurance policy for anyone other than the assigned cab driver to operate the cabs. On March 4, 2016, Joseph was the only driver authorized to drive the Cab. Moore did not give Defendant permission to drive the Cab on that date or at any time.

**{23}** Detective Graham testified that upon arriving at Martin's home on March 4, 2016, Detective Graham made contact with Martin, entered the home and saw that the living room had been "destroyed." He then received information that Defendant was at his mother's residence. Upon arriving at Defendant's mother's residence, Detective Graham asked Defendant what happened. Defendant said that he had an argument with Martin, and then left her home in the Cab. Defendant then gave the detective directions to where he had parked the Cab (approximately one mile away from his mother's residence).

**{24}** After the State rested, Defendant called Holland as a witness. The only relevant testimony given by Holland was that Defendant had been driving the Cab earlier in the day. Defendant then testified and provided the following narrative. Joseph, Martin, and Defendant frequently drove the Cab for personal errands. On March 4, 2016, Defendant got into an argument with Martin, during which she handed him the keys and told him to take the Cab and leave. After leaving in the Cab, Defendant received a phone call from Martin, in which she stated she had called the cops. Defendant, believing that permission to drive the vehicle was revoked, stopped the Cab and left it on the side of the road, along with the keys. Defendant conceded that he took the Cab without permission from Moore or Joseph. However, Defendant testified that he did not know that Moore owned the Cab, or that Joseph was assigned the Cab as an independent contractor for Dollar Cab.

**{25}** Defendant argues that the State failed to prove "that it was unreasonable for [Defendant] to believe that when his sister gave him the keys, he had permission to drive the [Cab]." However, there was evidence from which a jury could have concluded that it was unreasonable for Defendant to believe he had permission to drive the Cab, particularly if the jury found any aspect of Defendant's testimony to be not credible. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it

is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). For instance, the Cab was clearly marked as a Dollar Cab, including with a phone number and state PRC number, and Defendant knew that the Cab was not owned by Martin. A reasonable juror could find that it was unreasonable to believe that anyone, other than the owner, could give another person permission to drive a commercial vehicle such as the Cab, particularly when that person had no authority to use the Cab herself. A reasonable juror might also find that, even if Martin told Defendant to take the Cab, she did not grant "permission" but was simply trying to get Defendant out of the house. Defendant's abandonment of the Cab on the side of the road could have been viewed by a reasonable juror as knowledge that he never had permission to drive the Cab and was fleeing the scene once he learned the police had been called. In short, substantial evidence supports the finding that Defendant did not have a reasonable belief that he had permission to drive the Cab.

**The State Correctly Charged Defendant With Unlawful Taking of a Motor Vehicle, Pursuant to Section 30-16D-1**

**{26}**   Defendant argues that under the general/specific statutory rule, embezzlement of a motor vehicle, Section 30-16D-2, is more specific than unlawful taking of a motor vehicle, Section 30-16D-1, and therefore he was charged with the wrong offense. The State argues that the general/specific statutory rule is inapplicable here and that unlawful taking of a motor vehicle was the proper charge. We agree with the State.

**{27}**   General/specific statutory arguments may be raised for the first time on appeal. *State v. Perea*, 2001-NMCA-002, ¶ 8, 130 N.M. 46, 16 P.3d 1105, *aff'd in part, vacated in part on other grounds*, 2001 NMSC-026, 130 N.M. 732, 31 P.3d 1006. The general/specific rule provides, "if two statutes, one general and one [specific], punish the same criminal conduct, the [specific] law . . . compel[s] the state to prosecute under the [specific] law." *State v. Cleve*, 1999-NMSC-017, ¶ 17, 127 N.M. 240, 980 P.2d 23 (internal quotation marks and citation omitted). To determine if the general/specific statutory rule applies, "[c]ourts should compare the elements of the two relevant crimes. If the elements of the two crimes are the same, the general/specific statute rule applies, and the prosecution must charge the defendant under the [specific] law." *Id.* ¶ 26. "If the elements differ, however, there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact; further inquiry is then necessary to determine whether the presumption stands." *State v. Santillanes*, 2001-NMSC-018, ¶ 16, 130 N.M. 464, 27 P.3d 456. Courts should then look towards other "indicia of legislative intent[,] includ[ing] . . . language, purpose, and histories of the statutes, as well as whether the violation of one statute will normally result in a violation of the other." *Id.* (internal quotation marks and citations omitted). "Examining whether the elements of the statutes differ requires statutory interpretation, an issue of law that we review de novo." *State v. Garcia*, 2013-NMCA-005, ¶ 27, 294 P.3d 1256.

**{28}** Here, unlawful taking of a motor vehicle consists of (1) the taking of a vehicle, (2) intentionally, and (3) without consent of the owner. Section 30-16D-1; UJI 14-1660 NMRA (unlawful taking of a motor vehicle; essential elements). "Unlawful taking of a vehicle primarily protects an owner's right to immediate possession of an automobile." *State v. McGruder*, 1997-NMSC-023, ¶ 30, 123 N.M. 302, 940 P.2d 150, *abrogated on other grounds by State v. Chavez*, 2009-NMSC-035, 146 N.M. 434, 211 P.3d 891. Embezzlement of a motor vehicle, on the other hand, consists of (1) entrustment of motor vehicle to the defendant, (2) embezzlement or conversion of vehicle to defendant's own use, and (3) a fraudulent intent "to deprive the owner of the vehicle or motor vehicle." Section 30-16D-2; *see* UJI 14-1641 NMRA (Embezzlement; essential elements). "Entrustment occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." *State v. Archie*, 1997-NMCA-058, ¶ 4, 123 N.M. 503, 943 P.2d 537 (internal quotation and citation omitted). Fraudulent intent is present where defendant intends at the time of conversion to deceive or cheat the owner of the owner's property. UJI 14-1641.

**{29}** Defendant argues that the general/specific statutory rule applies here, and that embezzlement of a motor vehicle is the more specific offense under that rule. We disagree. Defendant does not actually follow the framework, as set forward by *Cleve* and *Santillanes*, to show that the rule applies. We hold that it does not. The elements of the two statutes are different and contain no common elements. Therefore, there is a presumption that the Legislature intended to create separately punishable offenses and leave prosecutorial charging discretion intact. *See Santillanes*, 2001-NMSC-018, ¶ 16 (explaining where there are no common elements, there is a presumption against applying the rule). Other indicia of legislative intent, such as the language, purpose, and histories of the statutes, do not rebut this presumption. *Id.* The purposes of the respective statutes are distinct: unlawful taking of motor vehicle is intended to address the defendant who takes a vehicle without permission, while embezzlement of a motor vehicle is intended to address the defendant who had authority to take a vehicle, but overstepped that authority. *See* §§ 30-16D-1, -2. The distinctive purposes of the statutes are further evidenced by our Supreme Court's recognition in *State v. Green* that embezzlement statutes were enacted to fill a gap in the statutory scheme, and broaden the situations in which an individual could be convicted for taking another's property, regardless of whether they initially had consent of the owner. 1993-NMSC-056, ¶ 6, 116 N.M. 273, 861 P.2d 954 (explaining that "[b]ecause larceny required a trespass in the taking, a person who was lawfully in possession of property of another could not be convicted of larceny if the person converted the property"). For these reasons, we conclude that embezzlement of a motor vehicle is not a more specific statute; it is a separate crime. Therefore, the general/specific rule does not apply, and the prosecutor had discretion to charge the crime which best fit the situation.

**{30}** To the extent that Defendant argues that embezzlement of a motor vehicle is the more specific offense because the elements of intent and entrustment were at issue, we also disagree. This argument misunderstands the analysis of the general/specific statutory rule—as explained above—and prosecutorial discretion. Defendant cites *State v. Eder*, in which this Court held that whether the crime was larceny or embezzlement

was a fact for the jury to determine. 1985-NMCA-076, ¶¶ 10-11, 103 N.M. 211, 704 P.2d 465. There, the issue of whether the defendant had authority was at issue. *Id.* ¶ 10. However, here, Defendant admitted that he had permission from neither Moore nor Joseph. Whether Defendant had a reasonable belief that he had permission due to Martin's statement was relevant towards the mistake of fact defense but did not negate the fact that Defendant lacked permission of the owner. In sum, the only crime for which Defendant could have been charged and convicted was the unlawful taking of a motor vehicle. Therefore, the State properly charged Defendant with the crime best supported by the evidence available. *Garcia*, 2013-NMCA-005, ¶ 32 ("The [s]tate had discretion to determine the charges that should be brought against [the d]efendant based upon the evidence available to support them."). Defendant's conviction for unlawful taking of a motor vehicle did not violate the general/specific statutory rule, and the State was not required to charge Defendant under embezzlement of a motor vehicle.

**Conclusion**

**{31}** We affirm.

**{32}** **IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**KRISTINIA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**