This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38306**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VINCENT LOBATO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant appeals from the district court's judgment and sentence convicting him for shooting at or from a motor vehicle, contrary to NMSA 1978, Section 30-3-8(B) (1993); criminal damage to property over $1,000, contrary to NMSA 1978, Section 30-15-1 (1963); with a firearm enhancement, pursuant to NMSA 1978, Section 31-18-16 (1993, amended 2020). On appeal, Defendant raises two issues. First, Defendant challenges his conviction for shooting at or from a motor vehicle, contending the district court erred by refusing his proposed jury instruction on the definition of "reckless

disregard." *See* § 30-3-8(B) (requiring "reckless disregard for the person of another"). Second, Defendant challenges his conviction for criminal damage to property over $1,000, claiming that the State was required by the general/specific rule of statutory interpretation to charge him with injuring or tampering with a motor vehicle, contrary to NMSA Section 30-16D-5 (2009), rather than criminal damage to property over $1,000, contrary to Section 30-15-1. We are not persuaded that either the jury was improperly instructed, or that Defendant was improperly charged. For the reasons provided below, we affirm.

**BACKGROUND**

**{2}**     Defendant's convictions arose from Defendant's conduct following a traffic incident in which Defendant believed he had been cut off by Mr. and Mrs. Garcia (Victims). Defendant found Victims waiting in their parked vehicle outside a school. Defendant approached Mr. Garcia on foot. Mr. Garcia got out of his car. Defendant pointed a handgun at Mr. Garcia's face. Mr. Garcia got back into his car and, as he shut the door, Defendant fired his handgun at the Victims' vehicle eight times. Mr. Garcia returned fire as he attempted to drive away. The vehicle, which was valued at $9,000, was a total loss. The State charged Defendant, in relevant part, with shooting at or from a motor vehicle and criminal damage to property over $1,000. The jury found Defendant guilty of both counts. We discuss additional facts as needed in our analysis of the issues.

**DISCUSSION**

**Jury Instruction Defining the Term "Reckless Disregard"**

**{3}**     The uniform jury instruction for shooting at or from a motor vehicle, with no injury, UJI 14-342 NMRA, requires the State to prove that "[D]efendant willfully shot a firearm at or from a motor vehicle with *reckless disregard* for another person[.]" (Emphasis added.) The use note for UJI 14-342 adopts the definition of "reckless disregard" found in UJI 14-1704 NMRA. *See* UJI 14-342, use note 3 (stating that the definition of "reckless disregard" found in UJI 14-1704 must be given following the instruction on the elements of shooting at or from a motor vehicle). Thus, the applicable definition of "reckless disregard" for the offense of shooting at or from a motor vehicle is as follows:

>         For you to find that [D]efendant acted with reckless disregard in this case, you must find that he knew his conduct created a substantial and foreseeable risk, that he disregarded the risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others.

UJI 14-1704 (as modified by use note 3, UJI 14-342).

**{4}**     The State, consistent with the uniform jury instructions, requested the district court to instruct the jury on "reckless disregard" as provided above. Defendant

submitted a proposed jury instruction that modified UJI 14-1704, replacing UJI 14-1704's requirement that the jury find that Defendant "knew that his conduct created a substantial and *foreseeable* risk," (emphasis added), with a requirement that Defendant "knew his conduct created a substantial and *unjustifiable* risk" (emphasis added), and added the word "*consciously*" before the requirement that Defendant "disregarded a substantial and foreseeable risk." The modified jury instruction read:

> For you to find that [D]efendant acted with reckless disregard in this case, you must find that he knew that his conduct created a substantial and *unjustifiable* risk, that he *consciously* disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others.

The district court refused to modify UJI 14-1704.

**{5}** "Appellate courts review a trial court's rejection of proposed jury instructions de novo, because the rejection is closer to a determination of law than a determination of fact." *State v. Percival*, 2017-NMCA-042, ¶ 8, 394 P.3d 979 (alteration, internal quotation marks, and citation omitted). Where an objection is preserved, as it was in this case, we review the instruction for reversible error. *State v. Montoya*, 2015-NMSC-010, ¶ 25, 345 P.3d 1056. Reversible error arises if a reasonable juror would have been confused or misdirected. *State v. Watchman*, 2005-NMCA-125, ¶ 11, 138 N.M. 488, 122 P.3d 855. "Jury instructions are to be read and considered as a whole and when so considered they are proper if they fairly and accurately state the applicable law." *Montoya*, 2015 NMSC-010, ¶ 25 (alteration, internal quotation marks, and citation omitted).

**{6}** Generally, "uniform jury instructions and use notes are to be followed without substantial modification." *Watchman*, 2005-NMCA-125, ¶ 15 (internal quotation marks and citation omitted). The General Use Note for the Uniform Criminal Jury Instructions provides: "[A]n elements instruction may only be altered when the alteration is adequately supported by binding precedent or the unique circumstances of a particular case, and where the alteration is necessary in order to accurately convey the law to the jury."

**{7}** Defendant contends that his proposed modifications to the definition of "reckless disregard" in the uniform jury instructions were necessary to distinguish recklessness from negligence. Defendant relies on *State v. Consaul*, 2014-NMSC-030, 332 P.3d 850, a decision of our Supreme Court addressing, in the context of the criminal child abuse statute, NMSA 1978, § 30-6-1(A)(3) (2009), a jury instruction that conflated the conflicting requirements for civil negligence and reckless disregard. *See* UJI 14-602 to -605 NMRA (2014); *Consaul*, 2014-NMSC-030, ¶¶ 28-35. The flawed jury instruction provided that to find a defendant "acted with reckless disregard," the jury needed to find that the defendant "knew or should have known the defendant's conduct created a substantial and foreseeable risk, the defendant disregarded that risk and the defendant

was wholly indifferent to the consequences of the conduct and to the welfare and safety of [the child]." UJI 14-602(2) (2014).

{8}     Our Supreme Court was concerned that this jury instruction "do[es] not faithfully capture the true legislative intent" behind the child abuse statute and that this instruction could "contribute to jury confusion[.]" *Consaul*, 2014-NMSC-030, ¶ 35. The Court then concluded that our Legislature intended to punish only child abuse conduct that was committed with reckless disregard for the welfare of the child, not conduct that was merely negligent, *id.* ¶ 36, and that, therefore, juries should be instructed without any reference to negligent, inadvertent conduct. In particular, the Court expressed doubt about the continued use of the phrase "knew or should have known," a civil negligence standard, in the jury instructions for child abuse. *Id.* ¶¶ 28, 32-35, 39-40.

{9}     In this case, the jury instruction given on "reckless disregard," UJI 14-1704, explicitly instructs the jury that they must find that the defendant "*knew* that his conduct [of shooting at or from a motor vehicle] created a substantial and foreseeable risk," that Defendant disregarded that risk, and that Defendant was indifferent to the consequences and the safety of Victims. (Emphasis added.) The phrase "should have known," which our Supreme Court in *Consaul* found could give rise to the mistaken impression that ordinary negligence or mere inadvertence is sufficient to convict, is not present in UJI 14-1704. *See Consaul*, 2014-NMSC-030, ¶¶ 39-40, *see also State v. Suazo*, 2017-NMSC-011, ¶¶ 23-25, 390 P.3d 674 (explaining that use of a "should have known" standard suggests "ordinary negligence could be a sufficiently culpable mental state").

{10}    Further, we are not persuaded by Defendant's argument that the mere use of the word "foreseeable"—in describing the substantial risk the State had to prove that Defendant knowingly disregarded—creates confusion about the required state of mind. The use of the term "foreseeable" adds to the requirement that the defendant *know* his conduct created a substantial risk a requirement that the risk be one that is objectively foreseeable as well as substantial. This additional requirement does not create confusion with civil negligence.

{11}    Finally, Defendant does not point to any unique circumstances in this case that require substitution of the phrase "unjustifiable risk" for the phrase "unforeseen risk." *See* UJI Crim. Gen. Use Note. ("[A] [uniform jury] elements instruction may only be altered when the alteration is adequately supported by binding precedent or the unique circumstances of a particular case, and where the alteration is necessary in order to accurately convey the law to the jury."). To the extent Defendant is suggesting he was entitled to have the jury instructed on alleged justifications for his conduct, the district court did instruct the jury on Defendant's claim that his conduct was in self-defense, the sole justification offered by Defendant. Therefore, Defendant's requested substitution of the word "unjustified" for "unforeseen" would not have added anything to the instructions, when considered, as they must be, as a whole. *See Montoya*, 2015-NMSC-010, ¶ 25 (explaining that we read the jury instructions together and consider them as a whole to determine if they accurately convey the law).

**{12}** We conclude that the district court committed no error in its instruction of the jury on shooting at or from a motor vehicle.

## General/Specific Rule and *Arellano*

**{13}** Defendant contends that the general/specific rule required the State to charge Defendant with what Defendant contends is the more specific crime—injuring or tampering with a motor vehicle, Section 30-16D-5—rather than with what he contends is the more general crime—criminal damage to property in excess of $1,000, Section 30-15-1. Defense counsel moved to vacate Defendant's conviction for criminal damage to property in the district court, arguing that the State should have charged Defendant with misdemeanor injuring or tampering with a motor vehicle. Defendant argues that Section 30-16D-5 is a more specific statute, its elements are subsumed by the elements of criminal damage to property, there is no clear indication that the general/specific rule is inapplicable, and the rule of lenity should apply. The State responded that application of the general/specific rule to these offenses was directly and correctly rejected by this Court in *State v. Arellano*, 1997-NMCA-074, ¶¶ 7-13, 123 N.M. 589, 943 P.2d 1042. The district court concluded that *Arellano* remains good law on the issue after *State v. Santillanes*, 2001-NMSC-018, 130 N.M. 464, 27 P.3d 456; the general/specific rule is inapplicable because the offenses each contain elements the other does not; and the amount of damage Defendant caused does not give rise to the misdemeanor offense of injuring or tampering with a motor vehicle. On appeal, the parties again focus on the precedential value of *Arellano*. Determinations under the general/specific rule are matters of statutory interpretation that we review de novo. *State v. Garcia*, 2013-NMCA-005, ¶ 27, 294 P.3d 1256. Having independently reviewed the issue, we affirm.

**{14}** In *Santillanes*, our Supreme Court explained that the general/specific rule helps courts "determine whether the Legislature intends to punish particular criminal conduct under a specific statute instead of a general statute." 2001-NMSC-018, ¶ 11. In making this determination, courts should "compar[e] the elements of the crimes and, if necessary, resort[] to other indicia of legislative intent." *Id.* "An identity in elements demonstrates that the Legislature did not intend to punish separately under the two statutes for the same conduct and intended to limit prosecutorial discretion, absent evidence of a contrary legislative intent." *Id.* ¶ 16. "If the elements differ, however, there is a presumption that the Legislature intended to create separately punishable offenses and, concomitantly, intended to leave prosecutorial charging discretion intact; further inquiry is then necessary to determine whether the presumption stands." *Id.* Our Supreme Court cautioned against "a rigid, mechanistic" application of the general/specific rule to the exclusion of other rules of statutory construction, explaining that "each case presents unique questions of statutory construction" that require our courts to ascertain and give effect to legislative intent. *Id.* ¶ 17. It further warned that "courts should apply the general/specific statute rule guardedly to the extent that it operates to restrict the charging discretion of the prosecutor[,]" in light of the state's "broad discretion in charging." *Id.* ¶ 21 (internal quotation marks and citation omitted).

**{15}** In *Arellano*, this Court determined that our Legislature intended criminal damage to property and injuring or tampering with a motor vehicle to be complementary statutes, which can be harmonized, rather than general and specific statutes, particularly in cases like this one involving major damage to a motor vehicle. 1997-NMCA-074, ¶¶ 7-11. Although *Arellano* used some terminology our Supreme Court later abandoned in *Santillanes*, the Court in *Arellano* engaged in an analysis that in all material respects is consistent with the analysis set forth in *Santillanes*.

**{16}** In *Arellano*, this Court recognized that "[t]he general/specific rule is . . . not an inexorable command to be mechanically applied, but a principle to employ when it aids in reaching a reasonable interpretation of the [L]egislature's intention." *Id.* ¶ 5. The *Arellano* Court compared the elements of the offenses and determined that "each statute includes an element that the other does not[.]" *Id.* ¶ 8. This Court correctly observed in *Arrellano* that for a fourth-degree felony conviction, for criminal damage to property, the crime with which Defendant was charged in this case, Section 30-15-1 requires the State to prove as an element of the offense that the accused damaged any real or personal property in an amount that exceeded $1,000. *Arellano*, 1997-NMCA-074,¶ 8; *see also* § 30-15-1. Whereas, for a misdemeanor conviction for injuring or tampering with a motor vehicle, Section 30-16D-5(A) requires the state to prove that the accused purposefully damaged, touched, or tampered with a motor vehicle in one of eight specific ways applicable to the operation or components of a motor vehicle. None of the eight ways of tampering with a motor vehicle requires damages exceeding $1,000, and most do not require that the vehicle have actually suffered damage to support a conviction. *Arellano*, 1997-NMCA-074, ¶¶ 8-9 (citing NMSA 1978, Section 66-3-506 (1978), recompiled as Section 30-16D-5).

**{17}** This Court recognized in *Arellano* the significance of comparing elements for purposes of applying the general/specific rule, noting that an examination of the statutes at issue shows that there is no sound basis to characterize one as general and the other as specific. 1997-NMCA-074, ¶ 9. *Arellano* noted, for example, that while injuring or tampering with a motor vehicle is more general in that it punishes conduct whether or not any damage is done, it is more specific in that it deals only with motor vehicles. *Id.* And while criminal damage to property is more general in that it applies to damage done to different kinds of property, it is more specific in that it applies only if damage is done and it distinguishes between different amounts of damage. *Id.* These differences between the statutes, as observed in *Arellano*, show that "the violation of one of these statutes would not commonly result in violation of the other." *Santillanes*, 2001-NMSC-018, ¶ 24 (internal quotation marks and citation omitted).

**{18}** Also, *Arellano* explained that construing injuring or tampering with a motor vehicle to be the crime the Legislature intended to charge a person for major damage to a vehicle leads to the unreasonable and absurd result of providing a lesser penalty for damage over $1,000 only because the property damaged was a motor vehicle. *Arellano*, 1997-NMCA-074, ¶ 11. This approach in *Arellano* is consistent with later instructions from *Santillanes* to apply the general/specific rule flexibly and in conjunction

with other rules of statutory interpretation to discern legislative intent. *See Santillanes*, 2001-NMSC-018, ¶ 21.

**{19}** For these reasons, *Arellano* is materially consistent with *Santillanes* and correctly concludes that the Legislature intended the statutes at issue to be complementary, allowing the exercise of prosecutorial discretion as to which offense to charge in those instances where the statutory requirements overlap. Thus, they are not irreconcilably contradicting statutes subject to the general/specific rule. We are not persuaded that *Santillanes* compels a different result in this case.

**CONCLUSION**

**{20}** Based on the foregoing, we hold that the jury was properly instructed and Defendant was properly charged. We therefore affirm.

**{21} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**SHAMMARA H. HENDERSON, Judge**